OPINION OF THE COURT
Nanette Dembitz, J.
On March 2, 1981, near the end of trial in the strenuously contested paternity case at bar, legislation became effective authorizing the admission into evidence in Family Court paternity proceedings of the “Human Leucocyte Antigen” blood tissue test (L 1981, ch 9). Petitioner moves for an order directing respondent to undergo such a test, which in the uniform view of experts is capable of proving respondent’s paternity to a high degree of probability (see below as to reliability of the human leucocyte antigen test, hereafter termed HLA).
*710 Prior to the HLA amendment, the Family Court Act permitted the introduction of blood test evidence “only in cases where definite exclusion is established” (Family Ct Act, former § 532). Because of the unreliability of blood tests as affirmative proof of paternity at the time of the original adoption of the blood test provision, test results were admissible only to show the impossibility of the alleged father’s paternity but not to support an allegation of paternity. Petitioner’s pretrial motion for an HLA test, made prior to the amendment, was therefore denied. In her decision on that motion Family Court Judge McDonald referred to the argument that a positive HLA test result proved a man’s paternity with “approximately 95% accuracy” (Jane L. v Rodney B., 103 Misc 2d 9,10) and joined in the recommendation in opinions of other Judges that a statutory amendment should be considered that would permit a petitioner’s introduction into evidence of HLA results (103 Misc 2d, at p 12).
Amended section 532 reads in pertinent part: “The court, on motion of any party, shall advise the parties of their right to a blood test and shall order the mother, her child and the alleged father to submit to one or more blood grouping tests *** the results of the human leucocyte antigen blood tissue test may be received in evidence to aid in the determination of whether the alleged father is or is not the father” (L 1981, ch 9; italicized provision became effective March 2, 1981).
Before considering the constitutionality of the HLA amendment — which because of its recency has not to date been judicially reviewed — respondent’s procedural objections to petitioner’s motion will be determined. Respondent argues that petitioner’s motion is a motion for reargument which in accordance with CPLR 2221 should be determined by the Judge who denied petitioner’s previous application for an HLA test. However, since that denial was based solely on the absence of a statute of the very type now enacted, the policies of judicial efficiency and deference underlying CPLR 2221 show its inapplicability here.[1]
*711 The objection that the HLA amendment should not apply in a trial nearing completion at the time of its enactment must also be rejected. The principle is well established that “the procedure in an action is governed by the law regulating it at the time any question of procedure arises * * * the legislature may change the practice of the court and * * * the change will affect pending actions in the absence of words of exclusion.” (Lazarus v Metropolitan El. Ry. Co., 145 NY 581, 585; see Matter of Clayton v Clement, 33 NY2d 386, 390, relying upon Lazarus.)[2] Further, only judicial inefficiency would be accomplished by a denial of petitioner’s motion for an HLA test in the pending trial, because the HLA amendment would clearly constitute a ground for the grant of a motion for a new trial under CPLR 4404.[3]
CONSTITUTIONALITY OF HLA AMENDMENT
In Schmerber v California (384 US 757) the Supreme Court upheld the constitutionality of compelled extraction of blood from an automobile driver for the purpose of testing its alcoholic content. The opinion emphasized, however, that “compulsory administration of a blood test *** plainly involves the broadly conceived reach of a search and seizure under the Fourth Amendment”; and that tests “which are not justified in the circumstances, or which are made in an improper manner” are unconstitutional (384 US, at pp 767-768).
Applying Schmerber to the case at bar, there is no issue under the HLA amendment as to the manner of making the blood test, since laboratory conditions are obviously contemplated and indeed essential. And the intrusion upon the individual is of the same limited scope here as in Schmerber. The minimal nature of the incursion has been emphasized in other decisions as well as Schmerber: see Breithaupt v Abram (352 US 432, 436), “blood test procedure has become routine in our everyday life”; State v *712 Meacham (93 Wn 2d 735, 737): the HLA test involves only “the withdrawal of a small amount of blood from the alleged fathers”.[4]
We now turn to the question of whether there is justification for the slight intrusion on individual privacy effected by an order for an HLA blood test. The argument for justification begins with the circumstance that this test, though not conclusive as to paternity, can provide objective, unchanging, reliable evidence of it. In contrast to previous test methods, which afforded only a 75% possibility of excluding a falsely accused man, the HLA and adjunct blood grouping tests establish, according to unanimous expert opinion, a 91 to 98% probability that a man who tests as a possible father is in fact the father (the difference in percentage depending on how many related blood group systems are used besides HLA itself). (See Joint AMA-ABA Guidelines: Present Status of Serologic Testing in Problems of Disputed Parentage, 10 Fam L Q 247, 257.) As the highest court of Washington said in upholding the constitutionality of an order for an HLA test: “No other evidence that is at all comparable in effectiveness is available” to prove paternity. (State v Meacham, supra, at p 738; see, also, Matter of Edward K. v Marcy R., 106 Misc 2d 506, 509, and authorities there cited; State v Hanson, 277 NW2d 205, 206-207,_Minn_,_; Cramer v Morrison, 88 Cal App 3d 873, 884-885.)
Thus, a justification for the imposition of the HLA test is the State’s deep, pervasive, and abiding interest in the welfare of its children. (See Ginsberg v New York, 390 US 629, 640; Prince v Massachusetts, 321 US 158, 165-166, as to the primacy of this interest.)[5] And evidence aiding the accurate determination of parentage, with a consequent fixing of paternal responsibility, undoubtedly contributes to the well-being of children. (See State v Meacham, 93 Wn 2d 735, 738, supra.)
*713 Besides the general public interest in establishing a child’s paternity, in many cases, as in the case at bar, the public fisc is also a concern because the child without a known father receives public assistance funds in lieu of paternal support. See Salas v Cortez (24 Cal 2d 22) as to the State’s interest in fathers’ support of their children. Finally, even if only the private interest of mothers is considered, the ends of justice are served by opening the courts to reliable evidence, and by equality between parties with regard to relevant examinations of the other. (See Schlagenhauf v Holder, 379 US 104, 113-114.) Prior to the HLA amendment fathers had the right to an order subjecting a mother to a blood test to try to establish their exclusion (and habitually did so, whether for dilatory or other purposes), but mothers had no reciprocal right. The HLA amendment rectifies this inequality.
In sum, the slight intrusion on individual privacy resulting from the HLA test is justified by the public interest in reliable evidence of paternity, both for the sake of child welfare and of conservation of public assistance funds; and it is also justified by the interest in equality of discovery devices for both parties in paternity litigation. Accordingly, the amendment appears to be constitutional.[6]
Besides justification for the HLA amendment, the validity of the order requested by petitioner also depends on justification in terms of respondent individually.[7] The Meacham court suggested as a requisite for an HLA order that there be a prima facie showing of the mother’s sexual intercourse with the alleged father during the period when *714 conception must have occurred. Here not only did respondent admit to intercourse with petitioner at the crucial period but indeed a prima facie case of paternity was proved against him.
Respondent in defense elicited evidence that three other males also had such intercourse with petitioner (which intercourse petitioner denied). The ancient truism that a charge of having sexual intercourse “ ‘is so easy to make and so hard to defend’ ”* *****[8] — which is the rationale for the mother’s heavy burden of proof in a paternity case — also is logically applicable to testimony as to her intercourse with others than respondent. The HLA test results, if favorable to petitioner, would thus be in the nature of rebuttal evidence that would be particularly appropriate because of its independence from the conflicting testimony (see Beach v Beach, 114 F2d 479, 482).

. Certainly the prior Judge has discretion to decline a referral of the motion; and as the court file shows, such a declination has occurred here.

. To same effect, see Bradley v Richmond School Bd., 416 US 696, 711. See, also, Matter of Boyle, 208 Misc 942, 951: a statute establishing a rule “of evidence or procedural law, a matter of adjective law,” is applicable in trials pending at the time of its enactment.

. Since 10 witnesses have testified in the proceeding, repetition of the trial would be egregiously time consuming.

. It is only in an extraordinary case, such as that of a terminally ill person, that physical hazard might preclude a compelled blood test. See Matter of Alexander, 205 Misc 321.

. Indeed, the State’s interest even in the unborn child is so great that it can prohibit abortion after the fetus is viable. See Roe v Wade, 410 US 113, 163-164.

. The privilege against self incrimination has not been considered in this opinion because of the authoritative ruling that it is not implicated in “blood test evidence” (Schmerber v California, supra, at p 765); further, the privilege probably does not protect a person from testifying against himself when the only consequences are, as here, a possible declaration of status and civil financial liability. See Marine Midland Bank v Russo Produce Co., 50 NY2d 31, 42. The provision that a respondent in a paternity case need not testify against himself (Family Ct Act, § 531) seems to be an anachronistic survival from the years when, prior to enactment of the Family Court Act, paternity cases were criminal proceedings.

. See Kwartler v Kwartler, 291 NY 689; O’Brien v O’Brien, 4 AD2d 867, and Anonymous v Anonymous, 1 AD2d 312, as to basis for order for wife and her children to undergo blood grouping test when husband denies paternity in matrimonial action; see, *714 also, Schlagenhauf v Holder, supra, at pp 120-121, and Koump v Smith, 25 NY2d 287, 294-295, 299-300, as to justification for ordering physical examinations; Constantine v Diello, 24 AD2d 821, and Turner v Town of Amherst, 62 Misc 2d 257: basis for order under CPLR 3121 (subd [a]) for order for eye examination of defendant or defendant’s employee; Frances B. v Mark B., 78 Misc 2d 112: no basis for order for physical examination where physical condition clear from other evidence.

. Commissioner of Public Welfare of City of N. Y. v Kotel, 256 App Div 352, 353. *728 provisions of the policy, as does this court, finding the latter to be act-oriented.