189 N.J. Super. 479 (1983)
460 A.2d 713
ESSEX COUNTY DIVISION OF WELFARE, AS ASSIGNEE OF C.D., PLAINTIFF-APPELLANT,
v.
GILBERT HARRIS, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted May 3, 1983.
Decided May 9, 1983.
*480 Before Judges MICHELS, PRESSLER and TRAUTWEIN.
David H. Ben-Asher, Essex County Counsel, attorney for appellant (Thomas M. Bachman, Assistant County Counsel, of counsel and on the brief).
Respondent did not file a brief.
The opinion of the court was delivered by PRESSLER, J.A.D.
In this paternity proceeding, plaintiff Essex County Division of Welfare, as assignee of C.D., appeals from a judgment of the Superior Court, Law Division, adjudicating that defendant Gilbert Harris is not the father of C.D.'s child.
The critical issue on this appeal is the validity of the Law Division's order, entered after an evidential hearing, which denied plaintiff's pretrial request that Harris, a Christian Scientist, be required to submit to a human leucocyte antigen (HLA) test. The basis of the trial judge's denial of this request was his holding that requiring submission would constitute an infringement upon defendant's religious beliefs prohibited by the First Amendment of the Constitution. We are satisfied that he was in error in so holding.
Preliminarily, we are constrained to point out that the record does not support the trial judge's finding that taking a small quantity of blood for forensic test purposes would even constitute a violation of Christian Science religious tenets. In this respect the record shows that defendant, in his certification in response to plaintiff's notice of motion seeking the test order, did not explain his opposition other than by the general statement *481 that he refused to submit "for personal and religious reasons," asserting further that the cost of the test would be a burdensome expense. It was not until the hearing on the motion that he first identified himself as a Christian Scientist and asserted that his religious beliefs prohibited him from giving tissue or blood from his body. No further evidence as to the beliefs of Christian Science in this regard was adduced, and plaintiff was not then in a position to produce its own proofs in this respect because it had no pre-hearing notice of the basis of defendant's asserted religious objections. Nevertheless, the judge was satisfied with defendant's unsupported statement, taking
... judicial notice that on the Christian Science religion, they have certain things they cannot do. In my many years as a judge, I have signed orders at times wherein I would compel that there be certain operations and certain things done medically, because somebody's belief would prevent him from proceeding in the matter.
There's no question, also, and the Court will take judicial notice that under the Christian Science religion, they are not allowed to give any blood or have anything involving blood. That's a particular religion that the court has to respect.
We are, however, satisfied that it is by no means clear that the tenets of Christian Science prohibit the giving of a blood sample for testing purposes, whether voluntarily or under compulsion of court order. Cf. Mountain Lakes Bd. of Ed. v. Maas, 56 N.J. Super. 245, 270-271 (App.Div. 1959), aff'd o.b. 31 N.J. 537 (1960), cert. den. 363 U.S. 843, 80 S.Ct. 1613, 4 L.Ed. 1727 (1960). As Judge Goldmann there pointed out, the teachings of Mary Baker Eddy, the founder of the Christian Science Church, recommended that adherents submit to secular laws requiring vaccination, which is clearly contrary to the Church's beliefs. It is not clear to us that withdrawal of a bodily substance as opposed to introduction into the body of a foreign substance, as in the case of immunization, violates church teaching at all. Nor is it clear that even if it did, submission to withdrawal of blood would be prohibited if it was required by secular law. Evid.R. 9(1) permits judicial notice of "such specific facts and propositions of generalized knowledge as are so *482 universally known that they cannot reasonably be the subject of dispute." In view of the foregoing, the alleged religious tenet of the Christian Science Church here in question is patently not a matter meeting that standard.
More significantly, however, we are also satisfied that even if the Christian Science belief did prohibit the giving of blood for forensic purposes, that tenet would have to yield to the secular public policy here involved. It is well settled as a matter of federal First Amendment law that while it accords an absolute freedom to believe, it does not accord an absolute freedom to act or to fail to act. See, e.g., Cantwell v. Connecticut, 310 U.S. 296, 303-304, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940). Thus, in the context of governmental impingement upon religious beliefs which interdict particular medical procedures, it is well settled in this State that the practice of such beliefs is not immune from a modicum of governmental restraint where the governmental interest is compelling. See, e.g., John F. Kennedy Memorial Hosp. v. Heston, 58 N.J. 576 (1971), and State v. Perricone, 37 N.J. 463 (1962), cert. den. 371 U.S. 890 (1962) 83 S.Ct. 189, 9 L.Ed.2d 124 (1962), requiring blood transfusions contrary to religious beliefs. And see, requiring vaccination, Mountain Lakes Bd. of Ed. v. Maas, supra; Sadlock v. Carlstadt Bd. of Ed., 137 N.J.L. 85 (Sup.Ct. 1948).
We have no doubt of society's paramount and compelling interest in determining parentage and of its consequent overriding interest in accurately resolving contested paternity questions by requiring putative fathers to submit to routine and minimally intrusive blood testing. Cf. Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). The interests of children of disputed parentage are thereby advanced; the interests of the taxpayers who might be called upon to provide for the child's support in the absence of a paternity determination are thereby protected, and the interests of a putative father, who by test results can be excluded from a paternity finding, are thereby served. Nor is there any doubt that HLA testing constitutes a significant advance in providing a reliable scientific *483 tool for the fair and correct resolution of disputed paternity issues. See J.H. v. M.H., 177 N.J. Super. 436 (Ch.Div. 1980); Malvasi v. Malvasi, 167 N.J. Super. 513 (Ch.Div. 1979). And see L. 1983, c. 17, § 14, recognizing the scientific reliability of specific genetic testing, including the HLA test, in affirmatively establishing paternity.
The precise question here before us was recently considered by the State of Washington in State v. Meacham, 93 Wash.2d 735, 738, 612 P.2d 795 (Sup.Ct. 1980), which affirmed the trial court's order directing putative fathers to submit to blood and genetic testing, including HLA tests, despite their asserted contrary religious beliefs. We are in full accord with the observation there made that
The position taken by the prosecuting attorney and by the trial court was that, regardless of appellants' religious beliefs, the rights of the children in question prevail over the rights of the alleged fathers when these rights come in conflict as they have here. We agree.
First Amendment religious freedom embraces two concepts: freedom to believe and freedom to act. The former is absolute, the latter is not. United States v. Ballard, 322 U.S. 78, 64 S.Ct. 882, 88 L.Ed. 1148 (1944). The concept of ordered liberty precludes allowing every person to adhere to his or her own private standards of conduct on matters in which society has important interests. Wisconsin v. Yoder, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972).
Accordingly, a state may restrict an individual's exercise of conduct under a religious belief. Kallas v. Department of Motor Vehicles, 88 Wash.2d 354, 560 P.2d 709 (1977). To do so, however, the state must have a compelling interest and the restrictive statute must have a "nexus of necessity" with the asserted state interest. If the statute's purpose may be achieved by measures less drastic than restriction of First Amendment rights, the state must utilize such other measures. State v. Lotze, 92 Wash.2d 52, 593 P.2d 811 (1979). Above all, a court must seek to apply the flexible First Amendment doctrines in a manner which is both sensible and realistic. Wisconsin v. Yoder, supra.

Here, the rights of the children concerned are also of constitutional magnitude. In Gomez v. Perez, 409 U.S. 535, 538, 93 S.Ct. 872, 875, 35 L.Ed.2d 56 (1973), the Supreme Court held:
[O]nce a State posits a judicially enforceable right on behalf of children to needed support from their natural fathers there is no constitutionally sufficient justification for denying such an essential right to a child simply because its natural father has not married its mother.
In the same opinion at page 538, 93 S.Ct. at page 875, the court further said:
We recognize the lurking problems with respect to proof of paternity. Those problems are not to be lightly brushed aside, but neither can they be made into *484 an impenetrable barrier that works to shield otherwise invidious discrimination.
Here in each instance the State is seeking to safeguard the constitutional rights of a child and at the same time protect the interests of its taxpayers. That the State has a compelling interest in both aspects of the matter cannot be gainsaid. In these cases, we hold that the interests of the children and the State together prevail over the beliefs of the appellants insofar as those beliefs militate against the withdrawal of small amounts of blood for testing purposes. [612 P.2d at 798-799]
Finally, we are aware that N.J.S.A. 2A:83-3, prior to its recent amendment by L. 1983, c. 17, referred only to blood grouping tests and their probative utility in excluding rather than supporting the possibility of paternity. We agree, however, with J.H. v. M.H. and Malvasi, supra, that an order requiring HLA testing and the admissibility of HLA test results even prior to the effective date of that statute were appropriate judicial actions. Thus, we have no doubt at all as to the error of the trial court's ruling here.[1]
Plaintiff argues alternatively that the trial determination of the judge that defendant was not the father of C.D.'s child was against the weight of the evidence. We have carefully reviewed the record, and while we might not have come to the same conclusion that the trial judge reached, we cannot say that his findings were not adequately supported by the record. It is, however, clear that the proof adduced at trial regarding defendant's paternity were of sufficient probative weight to leave no doubt of the critical and perhaps dispositive nature of HLA test proofs.
*485 Finally, plaintiff argues that the trial judge erred in refusing to recuse himself on its application after the evidential hearing on the motion for the order compelling defendant to submit to the blood test. We are satisfied that recusal was not required under the circumstances here and we note further plaintiff's having itself so indicated on the record prior to the hearing on the motion when the judge's tenuous knowledge of defendant was disclosed by him to the parties.
The order denying plaintiff's request compelling defendant to submit to HLA testing is reversed. The judgment dismissing plaintiff's complaint is reversed. The matter is remanded to the trial court for further proceedings consistent herewith. We do not retain jurisdiction.
NOTES
[1] While the question of the retrospectivity of L. 1983, c. 17, is not directly before us, it is clearly a question which will be implicated on the remand. In this regard, we note that the New Jersey Supreme Court, specifically relying on L. 1983, c. 17, summarily reversed the unpublished opinion of this court in Camden County Welfare Bd. v. Kellner, Docket A-2142-80, reversing an order of the trial court admitting HLA test results prior to the date of the statute. See Camden County Welfare Bd. of Social Services v. Kellner, 93 N.J. 279 (1983).