Argued and submitted March 14, reversed and remanded August 13, 1986

STATE ex rel ADULT AND
FAMILY SERVICES DIVISION,
*Respondent,*

*v.*

BARNEY,
*Appellant.*

(D8407-65391; CA A36188)

723 P2d 372

Terence McLaughlin, Inmate Legal Services, Inc., Salem, argued the cause and filed the briefs for appellant.

James E. Mountain, Solicitor General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, Jeff Bennett, Assistant

Attorney General, and Jefry VanValkenburgh, Assistant Attorney General, Salem.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

This is a filiation proceeding initiated by the Adult and Family Services Division. ORS 109.124 *et seq.* The trial court entered a judgment establishing paternity. Respondent appeals. He contends that, as applied, ORS 109.252 violates his free exercise of religion under the state and federal constitutions. We reverse and remand on statutory grounds.

The trial court ordered respondent to submit a sample of his blood for testing. ORS 109.251; ORS 109.252.[1] Respondent refused. The state then moved for a judgment establishing paternity. ORS 109.252. The court allowed the motion and entered a judgment finding respondent to be the father of the child. The dispositive issues are whether respondent refused to submit to a "blood test," as that term is defined by ORS 109.251, and whether the interests of justice "require" that the question of paternity be resolved against him. ORS 109.252. We conclude that the record will not support a finding that respondent refused to take a "blood test" and that the interests of justice mandate further trial court proceedings.

Respondent is a practitioner in the Native American Church. His affidavit[2] states that he refused to provide a

---

[1] ORS 109.251 provides:

"As used in ORS 109.250 to 109.262, 'blood tests' includes any test for genetic markers to determine paternity, including but not limited to Human Leucocyte Antigen Test."

ORS 109.252 provides:

"In a proceeding under ORS 109.125 to 109.230 and 416.400 to 416.470, in which paternity is a relevant fact, the court or administrator, as defined in ORS 416.400, upon his or her own initiative or upon suggestion made by or on behalf of any person whose blood is involved may, or upon motion of any party to the action made at a time so as not to delay the proceedings unduly, shall order the mother, child, alleged father and any other named respondent who may be the father to submit to blood tests. If any person refuses to submit to such tests, the court or administrator may resolve the question of paternity against such person or enforce its order if the rights of others and the interests of justice so require."

The use of the term "blood tests" is misleading. Because ORS 109.251 specifically authorizes *any* test for genetic markers to determine paternity, including, *but not limited to,* HLA testing, it would be more accurate to refer to "paternity tests."

[2] Respondent was served with a copy of the petition and summons on August 7, 1984, at the Oregon State Penitentiary. The trial court record contains no appearance by respondent other than his affidavit supporting his counsel's memorandum in opposition to the state's motion for a judgment establishing paternity. In his affidavit,

sample of his blood for testing

> "based solely upon my spiritual beliefs. * * * It is an integral belief of my way of life that the Spirit would be disturbed by any blood testing. It is my belief that to remove blood from the body is to take the Spirit from the body. I have held this belief for all 44 years of my life; these teachings have been handed down from my grandmother. My objection to blood testing extends to any intrusive testing technique."

He agreed to produce tissue or fluid samples for any other testing that could be used as a substitute for the court-ordered test of his blood.[3] The state has not challenged the sincerity of his belief.[4] In reaching its decision, the trial court relied on *State v. Meacham,* 93 Wash 2d 735, 612 P2d 795 (1980). *See Essex Cty. Welfare Div. v. Harris,* 189 NJ Super 479, 460 A2d 713 (1983). However, the court made no findings that other

---

he asserts that he had filed a response denying paternity. However, we find no response in the trial court record.

[3] In his reply brief, respondent argues:

"As early as 1981, Support Enforcement Division requested a legislative change in ORS 109.252 specifically to allow skin tissue samples and saliva samples. Written testimony in support of House Bill 2366 (1981) includes the following:

'The identification of fathers in paternity cases is one of the major problems that the Support Enforcement Division faces in fulfilling its mission to reduce welfare costs to the state. At the present time, the best available means of making this determination is the use of genetic testing of the parties involved. Historically, this testing has been accomplished through an analysis of the different types of red blood cells in a blood sample. However, in recent years more meaningful and accurate genetic testing procedures have been developed, such as the Human Leucocyte Antigen or HLA test and electrophoresis test. All these tests are basically a test for and identification of genetic markers and as such are not necessarily blood tests. For example, the HLA test could use a skin tissue sample and an electrophoresis test could use a saliva sample instead of blood samples.'

The suggested changes are now part of ORS 109.252. Thus, at the time of the hearing, Support Enforcement Division was not only aware of the available testing procedures, but had agitated on behalf of legislation to allow their use."

[4] The state's brief states:

"For purposes of argument on its motion for judgment establishing paternity below, the state apparently conceded that Barney had a *bona fide* religious free exercise objection to the taking of his blood for testing purposes. Therefore, for purposes of its argument on appeal, the state does not contest the legitimacy and sincerity of Barney's religious beliefs concerning his refusal to submit to court-ordered paternity blood testing. As a consequence, the state does not assert that the determination of paternity did not burden his constitutionally protected interest."

tests for genetic markers to determine paternity were unavailable, ORS 109.251, or that the rights of others and the interests of justice required that it enter the judgment establishing paternity against respondent. ORS 109.252.

■ ■ The trial court had indicated that, because respondent was indigent, the state would probably pay for any other tests. *See State ex rel Fox v. Hicks,* 69 Or App 348, 686 P2d 431 (1984). Respondent's counsel then asked for "a few days to determine whether or not another test is available."[5]

We conclude that the record will not support a finding that respondent refused to submit to a "blood test," as that term is defined by ORS 109.251. Further, there was no showing that other evidence of paternity was not available.[6] The record is silent as to any testimony that could have been presented by the child's mother and as to any corroborating evidence that may have been available to support her claim that respondent is the father of her child. *See* ORS 109.145; ORS 109.155. The record is silent as to why the trial court did not order an investigation or the production of any other evidence that may have been available to establish a proper basis for relief. *See* ORS 109.145. The record also is silent as to why the trial court did not pursue respondent's offer to produce tissue or fluid samples as a substitute for testing his blood.[7] We conclude that the trial court erred in finding that

---

[5] During oral argument, the state argued that respondent had conceded at trial that there is no other less restrictive or intrusive alternative to blood testing. We do not read the record to show any such concession by respondent.

[6] ORS 109.252 appears to permit the trial court to enter a judgment of paternity against a putative father who refuses a test without requiring testimony from the child's mother or corroborating evidence. In contrast, ORS 109.135 and ORS 109.145 require such testimony and corroborating evidence when the putative father denies paternity, fails to answer or fails to appear at trial. Thus, the burden of proof appears to be *less* when the putative father appears, denies paternity and refuses a test than when he fails to answer or to appear at trial.

[7]
"THE COURT: The only other issue is whether there is some—Well, let me say this: The Statute that allows the Court to enter a judgment of paternity is discretionary, it seems to me, on this issue. So then, the Court will be prepared to adopt some other sanction if there was one available, or to, before entering judgment, to see what other alternatives there might be. If anyone is prepared to present any, then I would enter judgment. What that means, Mr. McLaughlin, is this: I will enter a judgment unless you give the court any other alternatives.

"Mr. McLAUGHLIN: Your Honor, I don't believe there is any other available alternative at this point to the H.L.A. blood test. My client is indigent.

appellant had refused a blood test and in entering a judgment establishing paternity.

Reversed and remanded.[8]

---

He cannot possibly afford expensive testing at this point.

"THE COURT: Well, the State will pay for the tests I guess.

"MR. McLAUGHLIN: Your Honor, I would appreciate just a few days to determine whether or not another test is available and any other information I could find on this point if that would be acceptable to the State.

"THE COURT: I am not sure exactly what you are asking.

"MR. McLAUGHLIN: Well, Your Honor —

"THE COURT: I will tell you what I will do. I am going to enter judgment establishing paternity as prayed for by the State. The Court will consider whatever post-adjudication motions may be filed, if any."

[8] Because we decide this appeal solely on statutory grounds, it is unnecessary for us to consider respondent's state and federal constitutional claims.