375 S.E.2d 794

**In the Matter of Russell Allen KILPATRICK and Constance H. Kitson.**

**No. 18311.**

Supreme Court of Appeals of West Virginia.

Dec. 9, 1988.

---

5. *See* note 4, *supra.*

Russell Allen Kilpatrick, Clarksburg, pro se.

Richard Yurko, Steptoe & Johnson, County Com'n, Clarksburg, for appellee.

McHUGH, Chief Justice:

This case is upon the appeal of Russell Allen Kilpatrick and Constance H. Kitson from the Circuit Court of Harrison County. The appellants challenge the requirements of *W. Va. Code*, 48–1–6 [1986], primarily the need to undergo a standard serological test, before a license for marriage is issued.[1]

I

The appellants are ordained ministers of the Universal Life Church. They wish to marry each other and petitioned the Harrison County Circuit Court to dispense with the requirement of a standard serological test for syphilis pursuant to *W. Va. Code*, 48–1–6 [1986] in order for a license for marriage to be issued. The appellants maintain that this test violates the free exercise clause of the first amendment to the *United States Constitution*,[2] because it requires the removal of blood from the

---

1. The appellants' challenge includes the requirement of a physician's certificate incidental to a standard serological test, stating that such a test has been performed.

   The appellants' challenge also includes the three-day waiting period before a marriage license is issued. However, they failed to address the issue of the three-day waiting period in their brief. They also raised numerous other issues in their petition which are imprecise and are not addressed in their brief. Consequently, this Court may deem the challenges waived. Syl. pt. 6, *Addair v. Bryant*, 168 W.Va. 306, 284 S.E.2d 374 (1981).

2. The appellants also argue that the serological test violates art. III, § 15 of the *West Virginia Constitution,* which contains language similar to the first amendment to the *United States Constitution*, guaranteeing freedom of religion. This provision of the *West Virginia Constitution* states:

   No man shall be compelled to frequent or support any religious worship, place or minis-try whatsoever; nor shall any man be enforced, restrained, molested or burthened, in his body or goods, or otherwise suffer, on account of his religious opinions or belief, but all men shall be free to profess, and by argument, to maintain their opinions in matters of religion; and the same shall, in no wise, affect, diminish or enlarge their civil capacities; and the legislature shall not prescribe any religious test whatever, or confer any peculiar privileges or advantages on any sect or denomination, or pass any law requiring or authorizing any religious society, or the people of any district within this State, to levy on themselves, or others, any tax for the erection or repair of any house for public worship, or for the support of any church or ministry, but it shall be left free for every person to select his religious instructor, and to make for his support, such private contract as he shall please.

body, a violation of the canon law of the Universal Life Church.

The first amendment to the *United States Constitution* states in pertinent part: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; ..." The clauses are commonly referred to as the establishment clause and the free exercise clause. The free exercise clause is applied to the states through the fourteenth amendment. *See Cantwell v. Connecticut,* 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213, 1218 (1940); *see also School District v. Schempp,* 374 U.S. 203, 215–16, 83 S.Ct. 1560, 1567–68, 10 L.Ed.2d 844, 854 (1963).

The statute at issue in this case is *W.Va. Code,* 48–1–6 [1986], which provides in pertinent part:

> Every license for marriage shall be issued by the clerk of the county commission in which either party usually resides, ... Such license shall be issued not sooner than three days after the filing with said clerk of a written application therefor.... Before any such license is issued each applicant therefor shall file with the clerk a certificate or certificates from any physician duly licensed in the state, stating that each party thereto has been given such examination, including a standard serological test, as may be necessary for the discovery of syphilis, made not more than thirty days prior to the date on which such license is issued, and stating that in the opinion of the physician the person therein named either is not infected with

syphilis or, if so infected, is not in the state of the disease which is or may later become communicable.

A majority of jurisdictions have similar statutory provisions, requiring tests for venereal disease, tuberculosis, mental incompetence, rubella immunity, or sickle cell anemia. 1 H. Clark, *The Law of Domestic Relations in the United States* § 2.3, at 89 (2d ed. 1987).[3]

## II

The appellants assert that the statutory requirement of a blood test is violative of the free exercise clause because it would require them to violate the canon law[4] of their church in order to marry.[5]

It is well established that a compelling state interest is necessary to justify inhibiting freedoms pursuant to the first amendment. *See NAACP v. Button,* 371 U.S. 415, 438, 83 S.Ct. 328, 341, 9 L.Ed.2d 405, 421 (1963). *See also Sherbert v. Verner,* 374 U.S. 398, 403, 83 S.Ct. 1790, 1793, 10 L.Ed.2d 965, 970 (1963).

The State of West Virginia maintains that it has a compelling interest in requiring individuals to submit to blood tests as a precondition to marriage in that: (1) the serological test serves the interest of society by detection of a communicable disease (syphilis); (2) health interests of prenuptial couples are protected; and (3) the interests of the future children of the married couple are protected. The State contends that these compelling interests allow certain restrictions on an individual's exercise of conduct in accord with a religious belief.

---

**3.** The United States Supreme Court has recognized the commonplace nature of blood tests. "The blood test procedure has become routine in our everyday life. It is a ritual for those going into the military service as well as those applying for marriage licenses." *Breithaupt v. Abram,* 352 U.S. 432, 436, 77 S.Ct. 408, 410, 1 L.Ed.2d 448, 451 (1957).

**4.** The appellants cite the Universal Life Church's "Cannon [sic] Law On Current Social Conduct," which canon, established in 1982, states in pertinent part: "The removal of blood for transfussion [sic] or testing of any type, is no less a sin against the Father than the transfusion of an organ. All life is part of the other, to desecrate a part, is the desecration of the whole."

**5.** The United States Supreme Court has recognized the right to marry as a fundamental right in an equal protection context, subjecting legislation regulating this right to a strict scrutiny level of protection. *Skinner v. Oklahoma,* 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655, 1660 (1942). For recognition of the right to marry in the substantive due process context, *see Zablocki v. Redhail,* 434 U.S. 374, 383–86, 98 S.Ct. 673, 679–81, 54 L.Ed.2d 618, 628–31 (1978); *Loving v. Virginia,* 388 U.S. 1, 12, 87 S.Ct. 1817, 1824, 18 L.Ed.2d 1010, 1018 (1967); *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).

The United States Supreme Court has enunciated the tenet that free exercise of religion involves a distinction between belief and conduct. *Cantwell v. Connecticut,* 310 U.S. 296, 303–04, 60 S.Ct. 900, 903, 84 L.Ed. 1213, 1218 (1940). *See also Wisconsin v. Yoder,* 406 U.S. 205, 220, 92 S.Ct. 1526, 1535–36, 32 L.Ed.2d 15, 27–28 (1972); *Sherbert v. Verner,* 374 U.S. 398, 402–03, 83 S.Ct. 1790, 1793, 10 L.Ed.2d 965, 969–70 (1963); *Braunfeld v. Brown,* 366 U.S. 599, 603, 81 S.Ct. 1144, 1146, 6 L.Ed.2d 563, 566 (1961); *United States v. Ballard,* 322 U.S. 78, 86, 64 S.Ct. 882, 886, 88 L.Ed. 1148, 1153–54 (1944). We view this distinction critical in upholding legislation in which a state has a compelling interest. While free exercise of religion may allow every person to hold his or her own convictions, such exercise does not allow one to act on those convictions to the detriment of compelling state interests.

This is a case of first impression in this jurisdiction. Other jurisdictions have dealt with similar issues arising from challenges of blood tests. Most of these challenges, however, have not been on the basis of the free exercise clause. Rather, they have dealt with the reliability and admissibility of such tests in paternity determination proceedings. *See, e.g., State ex rel. Buechler v. Vinsand,* 318 N.W.2d 208 (Iowa 1982); *B.S.H. v. J.J.H.,* 613 S.W.2d 453 (Mo.Ct.App.1981); *Jane L. v. Rodney B.,* 108 Misc.2d 709, 438 N.Y.S.2d 726 (N.Y. County Fam.Ct.1981); *Owens v. Bell,* 6 Ohio St.3d 46, 451 N.E.2d 241 (1983); *State ex rel. Adult & Family Services Division v. Barney,* 80 Or.App. 675, 723 P.2d 372 (1986); *In re D.A.A.P.,* 117 Wis.2d 120, 344 N.W.2d 200 (Ct.App.1983).

The Supreme Court of Washington, in *State v. Meacham,* 93 Wash.2d 735, 612 P.2d 795 (1980), dealt with the issue of a free exercise challenge to a blood test in a paternity proceeding. The appellants in *Meacham* challenged a Washington statute that allowed a trial court, in a proceeding to determine paternity, to order the putative father, the mother, and the child to submit to a blood test. In upholding the constitutionality of the statute, the Supreme Court of Washington held that freedom to act in accordance with a religious

belief may be proscribed by state action if the action is in furtherance of a compelling state interest. In so holding, the court balanced the appellants' first amendment claim against the compelling interests of the state:

> [T]he State is seeking to safeguard the constitutional rights of a child and at the same time protect the interests of its taxpayers.... [W]e hold that the interests of the children and the State together prevail over the beliefs of the appellants insofar as those beliefs militate against the withdrawal of small amounts of blood for testing purposes.

93 Wash.2d at 741, 612 P.2d at 799.

Like rationale has been adopted in other jurisdictions. *Meacham* was followed by a New Jersey appeals court in *Essex County Division of Welfare v. Harris,* 189 N.J.Super. 479, 460 A.2d 713 (App.Div.1983), which held that "society's paramount and compelling interest" in paternity determination was sufficient to overcome a free exercise claim. 189 N.J.Super. at 482, 460 A.2d at 714. Similarly, in *Martine S v. Anthony D,* 120 Misc.2d 567, 466 N.Y.S.2d 194 (Kings County Fam.Ct.1983), a putative father who was required to submit to a blood test to determine paternity claimed that such a test violated the dictates of his conscience. Although there existed no scriptural or doctrinal basis for his refusal, he claimed that the free exercise of religion included following his conscience. The New York family court, however, pointed out that "[t]he Courts of our state have been disinclined to afford First Amendment protection to matters of personal conscience even where a religious tenet taught a person to follow the dictates of their conscience." *Martine S,* 120 Misc.2d at 571, 466 N.Y.S.2d at 197.

We believe that the rationale of *Meacham* is sound and should be applied to the case now before us. As pointed out, the State has set forth interests in upholding the constitutionality of the serological test required by *W.Va.Code,* 48-1-6 [1986]. The test in question detects syphilis, protects the health interests of prenuptial couples, and protects the future children of the married couple. We view these interests as compelling. Clearly, the health and wel-

fare interests of the citizens of this State are served by a standard serological test required for the issuance of a marriage license. Moreover, such a test is a minimally intrusive means of achieving these interests.

Therefore, we hold that the free exercise clause of the first amendment to the *United States Constitution* and art. III, § 15 of the *West Virginia Constitution* are not violated by the provision of *W.Va.Code,* 48–1–6 [1986] requiring a standard serological test before a license for marriage will be issued, because this statutory provision furthers the compelling interests in the health and welfare of the citizens of this State.[6]

For the foregoing reasons, the judgment of the Circuit Court of Harrison County is affirmed.

AFFIRMED.

---

**6.** The appellants also ask this Court to recognize a religious belief as an extraordinary circumstance as defined by *W.Va.Code,* 48–1–6c [1969], which provides in part:

In case of an emergency or extraordinary circumstances, as shown by affidavit or other proof, a judge of any court of record of the county, in which county an application for a marriage license is to be filed, may direct the clerk of the county court by order duly entered in the office of the clerk of said court of record, to issue such license at any time before the expiration of the three-day limit and to dispense with those requirements which relate to the filing with the licensing authority by either or both of the parties of the physician's certificate and laboratory statement.

We decline to do so, however, for the same reasons set forth in this opinion.