[No. 44373.   En Banc.   March 3, 1977.]

EDWARD E. KALLAS, *Appellant,* v. THE DEPARTMENT
OF MOTOR VEHICLES, *Respondent.*

*Herbert H. Fuller* (of *Fuller & Fuller*), for appellant.

*Slade Gorton, Attorney General,* and *William L. Williams, Assistant,* for respondent.

BRACHTENBACH, J.—This case involves a 3–day suspension of a state employee for discussing religion with fellow employees during working hours, over their objection and in violation of an order of his superior. These fellow employees included persons under the suspended worker's supervision. This is an appeal from a judgment which affirmed an order of the State Personnel Board (RCW 41.06.110) which board had upheld the order of the Director of the Department of Motor Vehicles (DMV) suspending appellant from employment for 3 days. We affirm.

Appellant was employed by DMV as a Management Analyst III. That position involved evaluation of employee efficiency, proper use of people and equipment, the establishment of work systems and the setting of standards of job performance. Part of appellant's duties included evaluation of personnel and their work product; an adverse evaluation could lead to reassignment or termination. Appellant's departmental director received a complaint from a member of the staff that appellant was discussing frequently, with personnel under his supervision, religious matters. Investigation revealed that appellant in fact was doing such during working hours, that employees objected to it, and some felt intimidated because of appellant's position as part of management. Thereafter the departmental director gave a verbal order to appellant and another, who had also been involved, to stop discussing religion during working hours with other DMV employees. The restriction did not apply to coffee breaks or the lunch period. Some 4 months later the departmental director received another

complaint about appellant's religious activities during working hours; investigation ensued.

In support of the conclusion that appellant had violated the departmental director's order, three witnesses appeared before the personnel board. One was acting supervisor of a work center, responsible directly to appellant who would render evaluation of the witness' performance and affect her future employment. Appellant expressed his belief to the witness, based on his religious views, that women should not work and were emotionally incapable of being supervisors. This was contrary to the affirmative action program of DMV. Appellant pressed upon the witness a book on religion and child raising. On another occasion appellant asked the witness to change the numbers on a certain official form because the numbers used were "the sign of the devil." The same witness stated that persons working under her supervision were upset at the extensive time appellant spent discussing religion. Another witness related somewhat similar experiences and additionally complained about the time appellant spent on the telephone dealing with church matters. The third witness was on a probationary employment period. He testified that he felt he had to agree with appellant's views because of the pressure of appellant being his evaluator. He stated that appellant's religious discussions were constant, stating that he "just never let up." Appellant testified, denying part of the alleged conversations, that after the order was given to avoid religious discussions, he attempted to limit religious comments to believers only. No one questioned appellant's sincerity or the beliefs of the particular faith embraced by him, the nature of which is not revealed by the record.

The board entered findings that *before* the directive to avoid religious discussions, appellant had carried on such activities, that it interfered with performance of the department's business, and caused concern on the part of some employees who felt intimidated. Further, the board found that *after* the order, appellant involved three employees in such discussions, that the employees felt

intimidated and registered complaints. The board concluded that appellant's activities constituted insubordination, that they did not involve a neglect of duty and that the 3-day suspension was appropriate.

■ Appellant's appeal to superior court was based on all of the five grounds specified in RCW 41.06.200(1)(a) through (e). The trial court rejected the factual and legal contentions of appellant. On factual matters, it properly restricted its function to a review of the record to ascertain whether there existed "any competent, relevant and substantive evidence which, if accepted as true, would, within the bounds of reason, directly or circumstantially support the challenged finding". This is the rule of *Gogerty v. Department of Institutions,* 71 Wn.2d 1, 8, 426 P.2d 476 (1967). We agree that the findings of the board are not contrary to a preponderance of the evidence nor arbitrary or capricious.

■■ Since the board found that the order restricting religious discussion was given, that appellant violated it and that such constituted insubordination, we must consider appellant's constitutional challenges. He contends that the issuance of the order and his suspension violated his rights of freedom of speech, religion and due process, citing the first and fourteenth amendments to the federal constitution and article 1, sections 3, 5 and 11 of the state constitution. We start with the proposition that the freedom of religion provision of the First Amendment has a dual nature. The establishment feature guarantees government neutrality while the free exercise concept is a recognition of the individual's liberty in religious matters. This has been clearly stated by the United States Supreme Court. It has recognized the possible conflict between the two concepts and has acknowledged that differing standards apply to each. In *Cantwell v. Connecticut,* 310 U.S. 296, 303–04, 84 L. Ed. 1213, 60 S. Ct. 900, 128 A.L.R. 1352 (1940), it said:

Thus the Amendment embraces two concepts,—freedom to believe and freedom to act. The first is absolute but, in

the nature of things, the second cannot be. Conduct remains subject to regulation for the protection of society.

Further it is stated:

[T]his Court repeatedly has recognized that tension inevitably exists between the Free Exercise and the Establishment Clauses and that it may often not be possible to promote the former without offending the latter. As a result of this tension, our cases require the State to maintain an attitude of "neutrality," neither "advancing" nor "inhibiting" religion.

(Citations omitted.) *Committee for Pub. Educ. & Religious Liberty v. Nyquist,* 413 U.S. 756, 788, 37 L. Ed. 2d 948, 93 S. Ct. 2955 (1973).

Here it is clear that there was no impingement upon appellant's freedom regarding his own religious belief. Rather the issue is whether appellant's right to exercise his religious beliefs, through his conduct and speech, was restricted unconstitutionally. Resolution of that issue involves the rights and duties of three entities, the State, the appellant and his coworkers. The State must be neutral. It cannot thrust belief or nonbelief upon anyone. Yet it can impose necessary restriction upon religious *conduct* under certain conditions. *Cantwell v. Connecticut, supra.* The threshold for such regulation or restriction is set forth in *Sherbert v. Verner,* 374 U.S. 398, 406, 10 L. Ed. 2d 965, 83 S. Ct. 1790 (1963):

It is basic that no showing merely of a rational relationship to some colorable state interest would suffice; in this highly sensitive constitutional area, "[o]nly the gravest abuses, endangering paramount interests, give occasion for permissible limitation," . . .

(Citation omitted.)

■ Here the compelling State interest is the constitutional duty of the State to be neutral in matters of religion. That is, its duty is coextensive with and the source of its paramount interest. The only restriction the State has placed on appellant's conduct is a prohibition against imposing his religious views upon other state workers in his

department. His supervisory and evaluative duties over those other employees are particularly relevant to the State's obligation of insistence upon neutrality on State property during working hours. The tension between appellant's rights and the State's absolute obligation of neutrality must be resolved in favor of the State. Parenthetically we note a decision by the United States Equal Employment Opportunity Commission which held that an employer violated Title VII of the Civil Rights Act by allowing a supervisor to propound his religious beliefs while on the job; the commission considered this a failure to provide a working environment free of religious intimidation. EEOC Decision No. 72–1114, 4 FEP Cases 842 (1972).

Appellant's fellow employees, too, have constitutional rights. The State cannot be a party to violating their rights of privacy and nonassociation. *Good v. Associated Students,* 86 Wn.2d 94, 542 P.2d 762 (1975). The State's limited restriction upon appellant's conduct was pursuant to the State's constitutional duty and in recognition of the constitutional rights of appellant's fellow employees.

The judgment is affirmed.

WRIGHT, C.J., and ROSELLINI, HAMILTON, STAFFORD, UTTER, HOROWITZ, and DOLLIVER, JJ., concur.