[No. 46084.   En Banc.   June 19, 1980.]

THE STATE OF WASHINGTON, ET AL, *Respondents,* v.
MICHAEL O'NEAL MEACHAM, *Appellant.*

THE STATE OF WASHINGTON, ET AL, *Respondents,* v.
RICHARD L. WATSON, *Appellant.*

Robert H. Stevenson, for appellant Meacham.

Jordan, Brinster, Templeman & Jordan, P.S., by Timothy P. Ryan, for appellant Watson.

Russ Juckett, Prosecuting Attorney, Hugh W. Hawkins, Jr., Special Deputy, and Daniel Radin and Randall W. Yates, Deputies, for respondent.

HICKS, J.—These cases consolidated on appeal arise from actions brought under RCW 26.26, this state's version of the Uniform Law Commission's Uniform Parentage Act.[1] Each appellant, a putative father, was ordered to submit to the withdrawal of a small amount of his blood for testing. Each objected on similar constitutional grounds, and took an interlocutory appeal to this court. We affirm the trial court in each case and remand for further proceedings.

The State of Washington initiated separate proceedings under RCW 26.26 to establish Meacham and Watson as the fathers of two children born out of wedlock to different mothers. Under RCW 26.26.100, the State in each case applied to the trial court for an order requiring the putative father, the mother, and the child to submit to the withdrawal of small amounts of blood to be sent to a qualified expert for testing.

Both men resisted the State's proposal, each asserting substantially the same grounds. Each objected that a compulsory blood test would violate his constitutional rights to personal privacy, freedom from unreasonable searches and seizures, and freedom of religion.

---

[1]These appeals were filed before publication of our decision in State v. Douty, 92 Wn.2d 930, 603 P.2d 373 (1979). There, we held that, for a child born prior to the effective date of the act, the State was precluded from bringing a parentage action in its own name under RCW 26.26 where it was seeking back support, birth expenses and other relief in addition to determining paternity. Douty may impact one of the instant cases upon its return to the trial court.

After full adversary hearings, the trial court in each case ruled that RCW 26.26.100 was constitutional and issued an order requiring the alleged father to submit to the withdrawal of blood. Appeal to this court followed under RAP 4.2.[2]

RCW 26.26.100 provides in pertinent part:

(1) The court may, and upon request of a party shall, require the child, mother, or alleged father to submit to blood tests. The tests shall be performed by an expert qualified as an examiner of blood types, appointed by the court.

Here, in each case the trial court appointed a nationally recognized expert, R. Ben Dawson, M.D., of Baltimore, Maryland, to perform the blood tests. The trial court's order provided that the "expert shall perform tests, including but not limited to the Human Leukocyte Antigen (HLA), on said blood samples . . ." The reliability of the HLA test as an indicator of parentage is high. The test has been endorsed by the American Medical Association and the Section on Family Law of the American Bar Association for use in parentage proceedings. *See Joint AMA–ABA Guidelines: Present Status of Serologic Testing in Problems of Disputed Parentage,* 10 Family L.Q. 247 (1976).

The constitutional objections raised in these cases, right of privacy, freedom from unreasonable search and seizure, and freedom of religion do not preclude the trial court from ordering the withdrawal of a small amount of blood from the alleged fathers for testing. The intrusion by the State is minimal in each instance and the State's interest in accurately determining the parentage of the children

---

[2]Rule 4.2 of the Rules of Appellate Procedure provides in part as follows:

"(a) . . . A party may seek review in the Supreme Court of a decision of a trial court . . . in the following types of cases:

" . . .

"(4) *Public Issues.* A case involving a fundamental and urgent issue of broad public import which requires prompt and ultimate determination."

The trial judges and the prosecuting attorney concurred that these cases were appropriate under RAP 4.2 for appeal to this court upon signing of the order requiring withdrawal of blood.

concerned is compelling. That the interest of the State in the welfare of its minor children has long been a compelling and paramount concern, *see Heney v. Heney,* 24 Wn.2d 445, 165 P.2d 864 (1946); *State v. Coffey,* 77 Wn.2d 630, 465 P.2d 665 (1970); *State v. Bowen,* 80 Wn.2d 808, 498 P.2d 877 (1972); *State v. Wood,* 89 Wn.2d 97, 569 P.2d 1148 (1977).

■ The right to privacy, to be let alone, while fundamental and personal in nature, is not absolute. The State may reasonably regulate this right to safeguard society or where it otherwise has a compelling interest. *Whalen v. Roe,* 429 U.S. 589, 51 L. Ed. 2d 64, 97 S. Ct. 869 (1977).

Here, the State has a compelling interest in fixing the parentage of a minor child. The test specified to be used is highly reliable. No other evidence that is at all comparable in effectiveness is available to the State. The pain inflicted when blood is withdrawn by an experienced technician is inconsequential. And, any hazard to health is virtually nonexistent.

While RCW 26.26.100 provides that a court may, and upon request of a party shall, require the alleged father to submit to blood tests, no peremptory order was entered by the trial court in either of these cases. Rather, in each instance an adversary hearing was conducted by the trial court before it determined to enter an order requiring the blood test. Because this is a matter of first impression, the State did not resist appellants' interlocutory appeals to test the constitutionality of the blood test requirement under RCW 26.26, the state's Uniform Parentage Act. We hold that the requirement to submit to the withdrawal of blood is not susceptible to a right of privacy challenge in either of these cases.

In addition to the issue of privacy, appellants challenge the order to submit to blood withdrawal on grounds that it constitutes an illegal search and seizure under the Fourth Amendment. We reject that contention out of hand.

■ Court ordered blood tests are undoubtedly "searches" within the meaning of the constitution. The

Fourth Amendment proscription, however, is directed only to those searches which are unreasonable. An unreasonable search is one unjustified by the circumstances or carried out in an improper manner. *Schmerber v. California,* 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826 (1966).

For example, in *Schmerber,* a blood sample was taken over the objections of a criminal defendant. An informed, deliberate decision was made to order the test. Because of the State's interest in deterring driving while under the influence of alcohol and the relatively inoffensive nature of a properly conducted blood test, the taking of the defendant's blood in a hospital setting was not deemed to be an unreasonable search.

As noted above, orders requiring submission for blood withdrawal in these cases were not entered until after full adversary hearings. Here, the search does not resemble *Rochin v. California,* 342 U.S. 165, 96 L. Ed. 183, 72 S. Ct. 205 (1952), where violence and substantial bodily intrusion was involved (stomach forcibly pumped to seize swallowed narcotics). These cases more nearly comport with *Schmerber.* We hold the orders for the withdrawal of blood to be reasonable under the circumstances.

Finally, appellants each contend that requiring them to submit to the withdrawal of a small amount of blood unconstitutionally impinges on their right to freedom of religion under the First Amendment. Appellant Watson does not inform us how the withdrawal of a small amount of his blood infringes upon his religious belief. He simply asserts that it would. Appellant Meacham, on the other hand, equates the withdrawal of blood *from* the body with the transfusion of blood *into* the body. In any event, the State concedes the legitimacy of the beliefs. In its memorandum regarding the appealability of the trial court order requiring the withdrawal of blood, the prosecutor stated, "[t]he State of Washington, by and through the Snohomish County Prosecuting Attorney's Office, does not question the sincerity of [appellant's] beliefs."

The position taken by the prosecuting attorney and by the trial court was that, regardless of appellants' religious beliefs, the rights of the children in question prevail over the rights of the alleged fathers when these rights come in conflict as they have here. We agree.

■ First Amendment religious freedom embraces two concepts: freedom to believe and freedom to act. The former is absolute, the latter is not. *United States v. Ballard,* 322 U.S. 78, 88 L. Ed. 1148, 64 S. Ct. 882 (1944). The concept of ordered liberty precludes allowing every person to adhere to his or her own private standards of conduct on matters in which society has important interests. *Wisconsin v. Yoder,* 406 U.S. 205, 32 L. Ed. 2d 15, 92 S. Ct. 1526 (1972).

Accordingly, a state may restrict an individual's exercise of conduct under a religious belief. *Kallas v. Department of Motor Vehicles,* 88 Wn.2d 354, 560 P.2d 709 (1977). To do so, however, the State must have a compelling interest and the restrictive statute must have a "nexus of necessity" with the asserted State interest. If the statute's purpose may be achieved by measures less drastic than restriction of First Amendment rights, the State must utilize such other measures. *State v. Lotze,* 92 Wn.2d 52, 593 P.2d 811 (1979). Above all, a court must seek to apply the flexible First Amendment doctrines in a manner which is both sensible and realistic. *Wisconsin v. Yoder, supra.*

Here, the rights of the children concerned are also of constitutional magnitude. In *Gomez v. Perez,* 409 U.S. 535, 538, 35 L. Ed. 2d 56, 93 S. Ct. 872 (1973), the Supreme Court held:

> [O]nce a State posits a judicially enforceable right on behalf of children to needed support from their natural fathers there is no constitutionally sufficient justification for denying such an essential right to a child simply because its natural father has not married its mother.

In the same opinion at page 538, the court further said:

> We recognize the lurking problems with respect to proof of paternity. Those problems are not to be lightly

brushed aside, but neither can they be made into an impenetrable barrier that works to shield otherwise invidious discrimination.

Here, in each instance the State is seeking to safeguard the constitutional rights of a child and at the same time protect the interests of its taxpayers. That the State has a compelling interest in both aspects of the matter cannot be gainsaid. In these cases, we hold that the interests of the children and the State together prevail over the beliefs of the appellants insofar as those beliefs militate against the withdrawal of small amounts of blood for testing purposes.

Neither of these appellants has denied having sexual intercourse with the particular mother concerned at about the time conception is alleged to have occurred. Had such a denial been made, it would have been incumbent upon the court to hold a hearing to determine that issue prior to ordering submission to a blood test. The trial court should be satisfied, at least prima facie, of the fact of sexual intercourse during the appropriate time period as a condition to requiring submission to a blood test. That is, however, not an issue in controversy in these cases.

The order of the trial court in each case is affirmed and the actions are remanded for further proceedings.

UTTER, C.J., ROSELLINI, STAFFORD, BRACHTENBACH, HOROWITZ, DOLLIVER, and WILLIAMS, JJ., and DEIERLEIN, J. Pro Tem., concur.