**McCARTY, Appellee,**

v.

**KIMMEL, Appellant.**

[Cite as *McCarty v. Kimmel* (1989), 62 Ohio App.3d 775.]

Court of Appeals of Ohio,
Montgomery County.

No. 11160.

Decided May 9, 1989.

*James R. Kirkland & Assoc.* and *James R. Kirkland,* for appellee.

*Sunderland & Moore, Joseph P. Moore* and *Paul M. Courtney,* for appellant.

---

BROGAN, Judge.

Appellant, Martha Kimmel, appeals an order of the trial court finding her in contempt for failing to submit to genetic testing.

This paternity action was filed by appellee, Daniel McCarty, on November 8, 1985. In his complaint, appellee states the following:

"1. Plaintiff brings this action under R.C. Chapter 3111 in an order [*sic* ] to establish the parent and child relationship, if any, existing between Plaintiff and Defendant, Rodney Kimmel.

" * * *

"3. Plaintiff brings this action upon the belief that he is the natural father of Defendant, Rodney Kimmel, by virtue of his having engaged in sexual intercourse with Defendant, Martha Kimmel, at or near the time of the conception of Defendant, Rodney Kimmel.

"4. Plaintiff avers that absent a genetic test as provided in R.C. § 3111.09, the existence of a parent and child relationship between Plaintiff and Defendant, Rodney Kimmel, cannot be alleged with any greater exactitude other than hereinabove set forth."

In her answer, appellant stated:

"3. Deny the allegations contained in Paragraph 3 and 4 of Plaintiff's Complaint.

" * * *

"Counterclaim

" * * *

"2. That Plaintiff, Daniel McCarty, is the natural father of said Rodney Kimmel."

Appellee filed no reply to the counterclaim of appellee.

Appellee commenced a prior paternity action on May 6, 1985, (see case No. JC 85 1940), wherein he "states that he is the natural father" of Rodney Kimmel. Appellant filed an answer wherein she admitted that appellee was the father of her child. However, this case was voluntarily dismissed without prejudice by appellee pursuant to Civ.R. 41(A)(1)(a) on October 23, 1985.

On April 8, 1988, the trial court granted appellee's request for genetic testing. On April 15, 1988, appellant moved for reconsideration, which was denied by the trial court on June 13, 1988. On that date, the trial court affirmed its decision mandating genetic testing.

In its decision and entry of August 5, 1988, the trial court found that although appellee had arranged for genetic testing to take place on July 19, 1988, appellant refused to comply with the court-ordered testing. Consequently, the trial court found appellant in contempt and sentenced her to ten days in the Montgomery County Jail. Execution of appellant's sentence was stayed pending this appeal.

Appellant's first assignment of error states:

"The trial court erred in finding appellant in contempt for refusal to comply with the court's order where the court was without authority to issue such order."

It is well-settled that "[a]n order issued by a court with jurisdiction must be obeyed until it is reversed by orderly and proper proceedings." *Hamilton City School Dist. Bd. of Edn. v. Hamilton Classroom Teachers Assn.* (1982), 5 Ohio App.3d 51, 53, 5 OBR 146, 149, 449 N.E.2d 26, 29. Thus, at first glance it would appear that appellant should have appealed the underlying order regarding genetic testing and that because she did not, we are precluded from reviewing the contempt citation. However, this is not the case, and we find that we may review the underlying order as well as the contempt citation.

Both the Constitution and legislation of this state permit this court to review only "final" orders and judgments. See Section 3(B)(2), Article IV, Ohio Constitution and R.C. 2505.03. A "final order" is defined by R.C. 2505.02, in pertinent part, as follows:

"An order affecting a substantial right in an action which in effect determines the action and prevents a judgment, an order affecting a substantial right made in a special proceeding or upon a summary application in an action after judgment, or an order vacating or setting aside a judgment and ordering a new trial is a final order which may be reviewed, affirmed, modified, or reversed, with or without retrial."

As stated in *Lantsberry v. Tilley Lamp Co.* (1971), 27 Ohio St.2d 303, 306, 56 O.O.2d 179, 180, 272 N.E.2d 127, 129: "A final order, therefore, is one disposing of the whole case or some separate and distinct branch thereof."

This case does not involve a "special proceeding," a "summary application * * * after judgment" or an order "vacating * * * a judgment and ordering a new trial." Only the first portion of R.C. 2505.02 is applicable here. In view of that fact, we find that the court order mandating genetic testing was not a final appealable order because it was not determinative of the paternity action. Therefore, appellant could not have appealed the order for genetic testing prior to the present time.

The case of *Smith v. Chester Twp. Bd. of Trustees* (1979), 60 Ohio St.2d 13, 14 O.O.3d 162, 396 N.E.2d 743, establishes our ability to review the underlying order regarding genetic testing. In the *Smith* syllabus, the Supreme Court held:

"Where a non-appealable interlocutory order results in a judgment of contempt, including fine or imprisonment, such a judgment is a final and appealable order and presents to the appellate court for review the propriety of the interlocutory order which is the underlying basis for the contempt adjudication."

■ Upon review of the genetic testing order, we hold that contrary to appellant's assertion, the trial court was not without authority to issue such order. Appellant argues that in his complaint filed May 6, 1985 in case No. JC 85 1940, appellee unequivocally stated that he was the father of Rodney Kimmel and that in her answer, appellant admitted his paternity. However, we find that case No. JC 85 1940 has limited relevance to the instant case.

This court, in *Crawford v. Bohannon* (1959), 110 Ohio App. 71, 75, 12 O.O.2d 248, 250, 168 N.E.2d 431, 435, discussed the relevance of an "abandoned or superseded pleading" and stated:

"[W]e recognize that an abandoned or superseded pleading no longer functions as such; the issues are to be found in the amended pleading. However, in the trial of the case, a party cannot escape completely from the content of abandoned pleadings. * * *

" * * * *

"[T]he [party] verified each pleading and is chargeable with knowledge of any inconsistencies therein." See, also, *Gest v. Piketon Lanes* (1965), 5 Ohio App.2d 1, 34 O.O.2d 16, 212 N.E.2d 922.

The statements made in appellee's initial complaint cannot be considered judicial admissions in the case at bar because his pleading is no longer

functional. We must look to the instant complaint in order to analyze appellant's contention that appellee's paternity is an admitted fact.

In his complaint, appellee seeks to "establish the parent and child relationship, *if any*" between himself and Rodney Kimmel. (Emphasis added.) (Complaint Paragraph 1.) He brings the action "upon the *belief* that he is the natural father" of Rodney Kimmel. (Emphasis added.) (Complaint Paragraph 3.) In her answer, appellant "admits" the allegations in Paragraph 1 of the complaint. It appears to us that appellant has thereby merely admitted that appellee is seeking to establish the parent and child relationship, if any exists, between appellee and Rodney Kimmel.

Appellant asserts in her counterclaim that appellee is the natural father of Rodney Kimmel. We find that this is the only unequivocal statement regarding paternity contained in the pleadings. Appellee never filed a reply admitting this allegation and we cannot assume such an admission without proof. Therefore, we hold that the issue of paternity is, in fact, contested and that the trial court possessed authority, pursuant to R.C. 3111.08, to "order genetic tests to be taken in accordance with section 3111.09 of the Revised Code."

Appellant argues that our view of the instant facts would permit "persons who have no relationship to a child to file actions under Chapter 3111 and force the mother and child to undergo blood tests. * * * *" (Appellant's Brief, at 8.) This argument is unconvincing. We find it unlikely that a "stranger" would desire to shoulder the obligation of support payments which are likely to follow the paternity action or to exercise visitation or custody rights with an unrelated child. Furthermore, we trust that the court would exercise appropriate sanctions if it found that a party had intentionally abused the genetic-testing process.

For the reasons stated above, appellant's first assignment of error is overruled.

Appellant's second assignment of error states:

"The trial court erred in finding appellant in contempt for refusal to comply with the court's order where the order violates appellant's right to privacy under the First, Third, Fourth, Fifth and Sixth Amendments, as applied through the Fourteenth Amendment, to the United States Constitution."

In her brief, appellant concedes that "in the ordinary paternity case, there is a compelling state interest in resolving disputes regarding paternity by using genetic testing." (Appellant's Brief, at 11.) Appellant then argues that this is not an ordinary paternity case because appellee has admitted paternity and appellant has acknowledged it. Our discussion of appellant's

first assignment of error, *supra,* indicates our disagreement with this argument.

We find that even assuming, *arguendo,* that the court-ordered withdrawal of blood is an invasion of appellant's fundamental right to privacy, the state has a compelling interest which is paramount. See *Leach v. Akron General Med. Ctr.* (1980), 68 Ohio Misc. 1, 9, 22 O.O.3d 49, 54, 426 N.E.2d 809, 814, stating: "The Constitutional right to privacy is paramount to a state interest unless that interest can be demonstrated to be compelling or outweighs the individual's Constitutional right."

Although research has revealed no Ohio case law directly on point, the Washington case of *State v. Meacham* (1980), 93 Wash.2d 735, 612 P.2d 795, is analogous to the case at bar. Therein, the state brought two actions, consolidated on appeal, against the putative fathers of two children. Pursuant to the Washington state version of the Uniform Parentage Act, (akin to R.C. Chapter 3111), the state requested and the court ordered each man to submit to blood testing. The alleged fathers objected to the testing, *inter alia,* on the grounds that "the blood test would violate [their] constitutional rights to personal privacy." *Meacham,* 93 Wash.2d at 736, 612 P.2d at 797. The *Meacham* court stated at 737, 740, 612 P.2d at 797, 799:

"The constitutional objections raised in these cases, right of privacy ... [does] not preclude the trial court from ordering the withdrawal of a small amount of blood from the alleged fathers for testing. The intrusion by the state is minimal in each instance and the State's interest in accurately determining the parentage of the children is compelling.

" * * *

"The right to privacy, to be let alone, while fundamental and personal in nature, is not absolute. The state may reasonably regulate this right to safeguard society or where it otherwise has a compelling interest. *Whalen v. Roe,* 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977).

"Here, the State has a compelling interest in fixing the parentage of a minor child. The test specified to be used is highly reliable. No other evidence that is at all comparable in effectiveness is available to the State. The pain inflicted when blood is withdrawn by an experienced technician is inconsequential. And, any hazard to health is virtually nonexistent.

" * * *

"Here, the rights of the children concerned are also of constitutional magnitude. In *Gomez v. Perez,* 409 U.S. 535, 538, 93 S.Ct. 872, 875, 35 L.Ed.2d 56 (1973), the Supreme Court held:

"[O]nce a State posits a judicially enforceable right on behalf of children to needed support from their natural fathers there is no constitutionally sufficient justification for denying such an essential right to a child simply because its natural father has not married its mother."

We hold, as did the *Meacham* court, that "the requirement to submit to the withdrawal of blood is not susceptible to a right of privacy challenge." *Meacham*, 93 Wash.2d at 738, 612 P.2d at 798. Appellant's second assignment of error is overruled.

Finally, we address what appears to be an assignment of error on cross-appeal by appellee which states:

"This court has no jurisdiction to hear this appeal as it is from an interlocutory order and the decision of August 5, 1988 is not a final appealable order."

█ It is clear that an order of contempt is final and appealable once the trial court makes a finding of contempt and imposes a sanction or penalty. See *Chain Bike Corp. v. Spoke 'N Wheel, Inc.* (1979), 64 Ohio App.2d 62, 18 O.O.3d 43, 410 N.E.2d 802. Appellee's assignment of error is without merit.

In accordance with this opinion, the decision of the trial court will be affirmed.

*Judgment affirmed.*

WOLFF, P.J., and GRADY, J., concur.