In re Rodney Gagne                    CV-95-460-B    10/04/95

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


In re Rodney Gagne                              Civil No. 95-460-B


## O R D E R

Rodney Gagne, appearing pro se, appeals from the magistrate judge's order, filed on September 11, 1995, requiring him to allow a blood sample to be drawn for testing.  For the reasons that follow, I affirm the magistrate judge's order.


## BACKGROUND

The present dispute arose when the United States Attorney in this district applied for an order pursuant to 28 U.S.C.A. § 1782 in response to a letter rogatory from Amtsgericht (a local court) of Amberg, Bavaria, Germany, under the Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, 23 U.S.T. 2555, T.I.A.S. 7444.  Specifically, the German court requested judicial assistance in obtaining a blood sample from Rodney Gagne and particular tests to be used as evidence in a paternity proceeding in that court.  On February 28, 1995, the magistrate judge in this district was appointed Commissioner to handle the German court's request.  When Gagne refused to comply voluntarily

with the request for a blood sample and testing, the magistrate judge ordered a show cause hearing for April 6, 1995.

Before the hearing, Gagne filed a motion to transfer and the first of three motions to dismiss the United States Attorney's efforts to satisfy the German court's request. He asserted privileges against producing the evidence based on the Fifth, Seventh, Ninth, and Fourteenth Amendments of the United States Constitution, several articles of the New Hampshire Constitution, forum non conveniens, res judicata, the New Hampshire paternity statute N.H. Rev. St. Ann. § 522, and argued that the federal court lacked jurisdiction. At the hearing, Gagne challenged the merits of the paternity claim pending in the German court, attempting to introduce evidence to negate the claim and arguing that due process required that he be provided that opportunity.

After the hearing, Gagne again moved to dismiss the action now arguing that the United States Attorney had not produced evidence in support of the paternity claim at the show cause hearing, that he was protected from producing the requested blood sample by the New Hampshire Constitution, Part One, Articles 15 and 20, the New Hampshire paternity statute, and on equal protection grounds because German citizens were given an opportunity to enforce paternity laws in federal courts when

2

United States citizens could not. Shortly thereafter, Gagne filed a third motion to dismiss again asserting jurisdictional infirmities, and equal protection claims, and raising a fourth amendment issue for the first time.

The magistrate judge issued an order on September 11, 1995, denying Gagne's first motion to dismiss and ordering him to provide a blood sample as requested by the German court and denied his motion to reconsider. Gagne then filed a notice of intent to appeal with a second motion for reconsideration. I review the magistrate judge's order as follows.

## DISCUSSIONN

The magistrate judge denied Gagne's first motion to dismiss and ordered him to comply with the German court's request for blood testing. Although it is not entirely clear whether the magistrate's order should be construed as dispositive or nondispositive under Federal Rule of Civil Procedure 72, because my review focuses on legal questions, rather than factual determinations, I consider the issues de novo under either standard. 28 U.S.C.A. § 636(b)(1); see also In re Application of Asta Medica, S.A., 794 F. Supp. 442, 444 n.1 (D.Me.), rev'd on other grounds, 981 F.2d 1 (1st Cir. 1992). After a reviewing the

3

magistrate judge's order, I affirm. I adopt the magistrate judge's reasoning and add the following as additional support.

## A.   Motion to Transfer

In his first motion to dismiss, Gagne asks that "the action" be transferred to another forum.  I reject this argument because the question of compliance with the letter rogatory from the German Court is properly in this court.  28 U.S.C.A. § 1782(a).

## B.   Jurisdiction

Gagne argues that the German court's request should be denied on jurisdictional grounds because of the domestic relations exception[1] to diversity jurisdiction and because the German court lacks personal jurisdiction over him precluding enforcement of a foreign judgment pursuant to the New Hampshire Uniform Enforcement of Foreign Judgments Act, N.H. Rev. Stat. Ann. ch. 524-A.  First, the issue before this court is compliance with a letter rogatory pursuant to the Convention on the Taking of Evidence Abroad.  Second, jurisdiction is based upon 28 U.S.C.A. § 1782(a), not diversity of citizenship, 28 U.S.C.A. § 1332(a).  The New Hampshire Uniform Enforcement of Foreign

---

[1]   See Ankenbrandt v. Richards, 112 S. Ct. 2206 (1992).

4

Judgments Act is inapplicable to this matter. Gagne's motions for reconsideration on jurisdictional grounds are denied.

**C. Fourth and Fifth Amendment Privileges**

In Schmerber v. California, 384 U.S. 757 (1966), the Supreme Court addressed the Fourth and Fifth Amendment implications of a compelled withdrawal of a blood sample for testing. The Court held that blood drawing and testing does not violate the Fifth Amendment because the accused was compelled to provide physical evidence, rather than self-incriminating testimony. Id. at 764-65. Therefore, while the Fifth Amendment privilege against compulsory self-incrimination applies in both criminal and civil actions, Kastigar v. United States, 406 U.S. 441, 444-45 (1972), Gagne cannot invoke the privilege to thwart the German court's request that he be compelled to provide a blood sample.[2]

The Supreme Court also held that taking and testing a blood sample by compulsion implicates the Fourth Amendment privilege

---

[2] Gagne also cites four provisions of the New Hampshire Constitution in support of his claimed privilege not to be compelled to testify against himself. Assuming without deciding that the Convention on Taking of Evidence Abroad, Article Eleven, would allow Gagne to assert state as well as federal privileges, he has not shown that the state constitutional provisions he cites would afford him any greater protection than the federal constitution. See, e.g., Arizona v. Evans, 115 S. Ct. 1185, 1190 (1995).

5

against unreasonable searches and seizures. Schmerber, 384 U.S. at 767-69. The Fourth Amendment privilege applies in civil as well as criminal actions. United States v. James Daniel Good Real Property, 114 S. Ct. 492, 500 (1993). The privilege protects against only unreasonable searches and seizures, however, meaning "intrusions which are not justified in the circumstances, or which are made in an improper manner." Schmerber, 384 U.S. at 768; accord Verona Sch. Dist. 47J v. Acton, 115 S. Ct. 2386, 2390 (1995). To determine whether a particular action passes Fourth Amendment constraints, the court must balance the "intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602, 619 (1989) (quotation omitted). Although probable cause to believe that the person to be searched has relevant evidence is usually required, a search based on less than probable cause may be reasonable if the balance of interests precludes such a showing. Id. at 624.

The intrusion caused by taking a blood sample for testing, when conducted in an appropriate setting according to accepted medical practices, is minimal. Id. at 625. Governmental interests in complying with the obligations of a United States

6

treaty, the Hague Convention, see, e.g. In re Letter Rogatory from the Local Court, 154 F.R.D. 196, 201 (N.D. Ill. 1994), and in determining a child's paternity and right to support are legitimate and weighty concerns, see, e.g., Little v. Streater, 452 U.S. 1, 14 (1981); State v. Meacham, 612 P.2d 795, 799 (Wash. 1980).  In addition, the complaint from the German Court provides a sufficient justification for the blood test based on evidence of the likelihood of Gagne's paternity of the plaintiff.[3]  See, e.g., In Interest of J.M., 590 So. 2d 565, 568 (La. 1991) (citing jurisdictions that require a preliminary showing of at least a reasonable possibility of paternity).  Therefore, court ordered blood sampling and testing in this case do not violate the Fourth Amendment.

## D.  Conscientious Objection

A claim of privilege based on conscience is grounded in the Free Exercise clause of the First Amendment that protects those who raise objections "based on a sincerely held religious belief."  Frazee v. Illinois Dep't of Employment Sec., 489 U.S.

---

[3]  The complaint states that the child's birth certificate establishes her date of birth and the child's mother's testimony establishes that she had sexual relations with the defendant within the relevant time period for the child's conception.

829, 834 (1989); see also 42 U.S.C.A. § 2000bb (West 1994).  At the show cause hearing, Gagne stated that unspecified scripture prohibited blood transfusion, but he has not sufficiently identified his religious belief that would justify his refusal to allow blood drawing and testing.[4]  Although state courts have found a compelling state interest in determining paternity sufficient to overcome challenges to blood tests based on the First Amendment, see, e.g., Meacham, 612 P.2d at 799, I need not go so far in this case, nor must I consider whether blood testing is the least restrictive means of determining paternity.  42 U.S.C.A. § 2000bb-1(b)(2).  Gagne has not sufficiently articulated his religious belief to show that it would be substantially burdened by compelled blood testing to invoke the First Amendment privilege.

Finding no applicable privilege that would prevent a court ordered blood sample and testing as requested by the German

---

[4]  The magistrate judge interpreted Gagne's argument to be that he opposed both blood transfusion and testing on moral and religious grounds. After reviewing the tape recording of the show cause hearing, however, I find that Gagne said, "I do to the best that I can, and constantly seeking to be better, through reading scripture and that's where, if you were to know scripture, that it really does prohibit at least blood transfusions, but that's not the issue here."  Gagne also described a family tradition of not seeing doctors.

court, I issue the following orders.

(1)  Rodney Gagne is ORDERED to appear at Lakes Region General Hospital Laboratory, 82 Highland Avenue, Laconia, New Hampshire, on October 19, 1995, at 10:00 a.m. to provide a sample of blood for testing purposes.

(2)  The United States Attorney is ORDERED to cause Gagne's blood sample to be analyzed by a serologic expert using the hematologic criteria listed hereunder:

> ABO (blood group) system, rhesus (CcDeCw), Kell/Cellano (Kk), P1, Duffy (Fy), Kidd (Jk), Lutheran (Lu) and Colton b (Cc-b), heptaglobins (hp), Gc (group specific component), gamma globulin (Gm), Km (Inv-1), acid phosphotase (acP), phosphoglucomitase (PGM1), adenylate cyclase, adenosin deaminase (ADA), glutamate pyruvic transaminase (GPT), 6-phosphoglucomate dehydrogenase (6-PGD), esterase-D (Es-D), glycoxalase, complement components C3, Properding factor Bf, transferines (Tf), plasminogens (Plg), alpha-1-antiripsin (Pi); also a determination of the white blood cells = HLA (human leucocyte antigen) complex with the loci A, B and C.

(3)  The United States Attorney is ORDERED to have the blood testing results and analysis transmitted to the German court that sent the letter rogatory, Amtsgericht of Amberg, Bavaria, Germany.

## **CONCLUSION**

For the foregoing reasons, defendant's appeal and motions for reconsideration (document nos. 16, 17, and 18) are denied and the magistrate judge's order is affirmed.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

October 4, 1995

cc:  T. David Plourde, Esq.
     Rodney Gagne, pro se

10