JOURNAL ENTRY AND OPINION
In these consolidated matters, Delorese Pearson appeals from a judgment entry of the Juvenile Court, which terminated her parental rights and granted permanent custody of her children, Jiya Morales and Monterra Calhoun, to the Cuyahoga County Department of Children and Family Services (CCDCFS). Ms. Pearson complains on appeal the court should not have granted CCDCFS permanent custody of her children, alleging the children should have been placed with her instead. After reviewing the record, we conclude the trial court did not abuse its discretion and affirm the judgment of the trial court.
The record before us reveals Ms. Pearson gave birth to Jiya on July 21, 1994. In July of 1996, Jiya was adjudicated neglected and dependent and placed in the temporary custody of CCDCFS. A case plan was instituted at that time for purposes of pursuing reunification. Upon completing the requirements of her case plan, Ms. Pearson was reunified with Jiya in February of 1998.
On May 26, 1999, CCDCFS filed another complaint for neglect and temporary custody with respect to Jiya following allegations of abuse. Following a hearing on August 6, 1999, Jiya was placed in the temporary custody of CCDCFS. Jiya was then placed with Mr. Hogdon, the alleged half-brother of Ms. Pearson. In November of 1999, Ms. Pearson pled guilty to a felony child endangerment charge with regard to Jiya and was sentenced to incarceration at Marysville for nine months. On February 16, 2000, CCDCFS filed a motion to modify temporary custody to permanent custody.
On September 16, 1999, Ms. Pearson gave birth to Monterra. Four days later, CCDCFS filed a complaint for neglect and permanent custody of Monterra. Emergency custody was awarded to CCDCFS on September 22, 1999. Monterra was then placed with Ginger Smith, the sister of David Monty Calhoun, the alleged father of Monterra. CCDCFS filed a motion to consolidate these cases, which the court granted.
On May 10, 1999, Ms. Pearson filed a motion requesting that the court award legal custody of Monterra to her paternal aunt and uncle, Ginger and Alonzo Smith. In the motion, Ms. Pearson said that awarding legal custody to Mr. and Mrs. Smith was in Monterra's best interest and that the home is appropriate and suitable for immediate placement.
On May 17, 2000, trial commenced before Judge Patrick F. Corrigan. At the outset of the hearing, the parties agreed to amend the original complaint as to Monterra in the following ways: that the heading be amended from Neglect pursuant to R.C. 2151.031(A)(2) to Dependency pursuant to R.C. 2151.04 and that allegation #6 be amended to read that the alleged father, Monty Calhoun, has not established paternity and provides no care and support of the child `because he is currently incarcerated.' Ms. Pearson's counsel expressly stated on the record in open court that he had no objection to these amendments. (Tr. 6).
Ms. Pearson's counsel did object to the proposed amendment that allegation #9 be amended to read permanent custody is in the best interest of the child `so that the aunt, Ginger Smith, can be considered for adoption.' Specifically, counsel for Ms. Pearson stated We do object to permanent custody. (Tr. 6).
Prior to opening statements, Mr. Calhoun made an oral motion to establish paternity. Ms. Pearson objected, claiming for the first time, that she was not sure if Mr. Calhoun was the father. The court then proceeded to hear testimony from Mr. Calhoun who swore he was the father of Monterra and that he agreed with the placement of Monterra in the permanent custody of CCDCFS so that his sister, Mrs. Smith, could adopt her. The trial court then accepted Mr. Calhoun's admission. (Tr. 13).
During the adjudicatory hearing, testimony was heard from several witnesses. First, social worker, Lisa Roche, testified that she became involved with Ms. Pearson and her children in February of 1999 and that she developed a case plan for Ms. Pearson which included drug assessment, domestic violence counseling, parenting classes and a psychological evaluation. Ms. Roche testified that Ms. Pearson completed the domestic violence counseling and the drug assessment, but did not complete the ten day early education class through Recovery Resources that was recommended by the drug assessment or the parenting classes and failed to receive a psychological evaluation.
Ms. Roche also testified, over Ms. Pearson's objection, about Ms. Pearson's criminal history; specifically, that in addition to the child endangerment conviction for which she was currently incarcerated, Ms. Pearson had been convicted of a theft charge in 1996.
With regard to the alleged fathers of the children, Ms. Roche testified about the lack of involvement of Jiya's alleged father, Juan Morales, in Jiya's life. Mr. Morales had not completed any of his case plan requirements and did not visit with Jiya. With regard to Monterra's father, Ms. Roche admitted that she did not put an order on Mr. Calhoun to establish paternity.
Finally, Ms. Roche testified that Ms. Pearson only showed an interest in being reunited with Monterra and not Jiya, that both Jiya and Monterra were adapting very well to their respective placements, and that both placements were willing to adopt.
CCDCFS presented testimony from three other witnesses. Christopher Cabot, the supervisor from CCDCFS assigned to the case, testified that although he never observed any interaction between Ms. Pearson and the children, he had spoken to Ms. Pearson on numerous occasions about her relationship with Jiya and that she had once told him that she was not interested in having Jiya returned to her.
Next, Ginger Smith testified regarding Monterra's placement with her and the child's relationship with her. She testified that Monterra had been with her since she was a week old and that she considered her a daughter. She expressed her desire to adopt Monterra and her unwillingness to accept legal custody. She also testified that she was willing to allow Ms. Pearson and Mr. Calhoun to have contact with Monterra in the future.
Finally, Mr. Calhoun testified that he was the father of Monterra, that Ms. Pearson never denied that he was the father of Monterra prior to the hearing that day, and that he was in agreement with the decision to place Monterra with his sister, Mrs. Smith, for adoption.
Ms. Pearson thereafter testified on her own behalf and presented testimony from Brenda Sherman. Ms. Pearson admitted that she had abused Jiya in the past and that she had not completed her case plan objectives for either child. She stated that she had not completed the case plan objectives because, while she was pregnant with Monterra, she was on bed rest and after that she was incarcerated. She further testified that she was in counseling and had been taking anger management classes during her incarceration.
Regarding the issue of paternity for Monterra, Ms. Pearson stated several times during her direct and cross-examination that Mr. Calhoun was the father of Monterra. (Tr. 115, 133, 134, 137.) However, she also stated that a man by the name of Michael Williams could be the father since he was coming over to her house during that time. (Tr. 135).
Ms. Sherman testified that she had known Ms. Pearson for approximately one year and had engaged in religious counseling with her. She admitted that she did not think the children should be reunified with Ms. Pearson as soon as she gets out of prison, but did state that she thought reunification would be possible in the future if Ms. Pearson received proper training, counseling and spiritual help.
At the conclusion of the trial, the guardian ad litem for the children recommended that both children be placed in the permanent custody of CCDCFS.
After the hearing, the court found, by clear and convincing evidence, that the children were neglected and granted permanent custody to CCDCFS. Ms. Pearson appeals from that decision and raises five assignments of error for our review.
 I. THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY SINCE (1) NONE OF THE CIRCUMSTANCES SET FORTH IN R.C. 2151.414 WERE PROVEN BY CLEAR AND CONVINCING EVIDENCE AND (2) THE JUDGMENT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In her first assignment of error, Ms. Pearson contends the court abused its discretion when it granted permanent custody of her children to CCDCFS in the absence of clear and convincing evidence and when it determined that her children could not be placed with her in a reasonable amount of time. CCDCFS maintains the court did not abuse its discretion when it determined the best interest of the children would be served by granting CCDCFS permanent custody. The issue presented here concerns the permanent custody of the children.
In considering an award of permanent custody, the court must first determine whether, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody. R.C. 2151.414(D). In determining the best interest of the child during the permanent custody hearing, the court must consider the factors listed in R.C. 2151.414(D), which include the reasonable probability the child will be adopted, the interaction of the child with the child's parents, siblings, and foster parents, the wishes of the child, the custodial history of the child, and the child's need for a legal secure permanent placement.
Here, the record reveals that Jiya has lived with the same foster family since June of 1999. Similarly, Monterra has lived with the same foster family since her birth in September of 1999. Both children have developed a close bond to their respective foster families and are developing normally for their age. Both foster families have expressed interest in adopting the children. With regard to Jiya, the record shows that Ms. Pearson's treatment of Jiya had been abusive in the past; indeed, Ms. Pearson was incarcerated at the time of trial as a result of her abuse of Jiya. Finally, the guardian ad litem recommended that permanent custody be granted. Accordingly, there is clear and convincing evidence that supports the trial court's determination that permanent custody is in the best interest of the children.
In addition to determining the child's best interest, the court must make a second determination before granting permanent custody: it must determine whether the child can be placed with a parent within a reasonable time or should not be placed with the parent. R.C.2151.414(B)(1)(a). The court is required to enter a finding that the child cannot be placed with a parent within a reasonable time if any factors set forth in R.C. 2151.414(E) apply, including the following:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
* * *
 (4) The parent has demonstrated a lack of commitment toward the child be failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
Here, the trial court enumerated R.C. 2151.414(E)(1) and (4) as applicable to the children. First, the trial court found that the parents had failed continuously and repeatedly to substantially remedy the conditions causing the children to be removed from the home. Specifically, the court found that Ms. Pearson failed to comply with the case plan. At the time of trial, Ms. Pearson had completed the initial drug assessment, but had not completed the recommended classes in follow-up to the assessment as required by her case plan. She had also failed to complete the parenting classes and the psychological evaluation. Both Mr. Morales and Mr. Calhoun, the alleged fathers of the children, had also failed to complete their case plans.
The trial court also found that the parents had failed or refused to provide basic necessities, regular support, visit, or communicate with the children when able to do so, or by other actions had shown an unwillingness to provide a permanent home for the children. Specifically, the court found that Ms. Pearson could not provide a safe and appropriate environment for the children. Indeed, the evidence showed that Ms. Pearson was incarcerated at the time of trial as a result of her abuse of Jiya. Moreover, Mr. Morales had no contact with Jiya, and, Mr. Calhoun admitted to the allegations relating to him and had agreed to permanent custody. Accordingly, the trial court's determination that Jiya and Monterra could not be placed with either parent within a reasonable time is supported by clear and convincing evidence.
We find that the trial court made its findings according to the statutory guidelines of R.C. 2151.414 and that these findings are supported by clear and convincing evidence. Therefore, Ms. Pearson's first assignment of error is overruled.
 II. THE COURT ABUSED ITS DISCRETION, VIOLATED DUE PROCESS AND LACKED JURISDICTION TO ESTABLISH PATERNITY.
In her second assignment of error, Ms. Pearson contends that the trial court abused its discretion in allowing Mr. Calhoun to establish paternity of Monterra, over her objection, through a sworn admission. CCDCFS claims that the journal entry issued by the trial court demonstrates that paternity was not established for Monterra. The issue here is whether paternity was established during the permanent custody hearing and whether such establishment violated Ms. Pearson's due process rights.
Here, the record shows that although Mr. Calhoun has not undergone genetic testing and has not formally acknowledged parentage of Monterra pursuant to R.C. 5101.314, the trial court accepted his sworn admission that he was the father of Monterra. Specifically, the transcript, at page 13, reads in pertinent part, as follows:
 Court: Okay so at this time the court will accept your admission then and also your agreement with permanent custody going to the agency.
 Ms. Prentice (attorney for Mr. Calhoun): Did you also enter an order that there was a parent child relationship, your Honor? Court: Yes. At this time we will also order that it's been established and the father admits that he is the father, the biological father of Monterra Calhoun.
The transcript also shows that although Ms. Pearson claimed at the onset of the adjudicatory hearing that Mr. Calhoun may not be the father of Monterra, she admitted on several occasions during the adjudicatory proceeding that Mr. Calhoun was the father of Monterra. (Tr. 115, 133, 134, 137). Moreover, one week prior to the adjudicatory hearing, she filed a motion requesting that the court award legal custody of Monterra to Mr. Calhoun's sister, naming her as the paternal aunt of Monterra.
Following the adjudicatory hearing, the trial court issued a journal entry which, while reflecting that Father states that he is the father of the child, also states that: Alleged father of the child has not established paternity and provides no care or support for the child because he is currently incarcerated.
A juvenile court may recognize an alleged father as the natural father of a child without adjudging him to be the legal father.[1] See Beene v. Cooks (Nov. 8, 1991), Lucas App. No. L-90-263, unreported; In re Meacham (Dec. 3, 1990), Stark App. No. CA-8189, unreported; In re Pierson (May 8, 1980), Franklin App. No. 79AP-846, unreported. This occurs where an alleged father does not submit to genetic testing but admits parentage. Davis v. Nikitin (Jan. 5, 1994), Summit App. No. 16327, unreported; McCarty v. Kimmel (1989), 62 Ohio App.3d 775, 779.
Here, although the transcript and journal entry reflect that the trial court recognized Mr. Calhoun as the father of Monterra, the journal entry clearly reflects that the trial court did not establish parentage and did not adjudicate Mr. Calhoun as the legal father of Monterra. Thus, we find no error in the trial court's recognition of Mr. Calhoun as the father, when the finding was supported by Mr. Calhoun's admission and the inconsistent testimony and evidence provided by Ms. Pearson throughout the trial. This recognition by the trial court did not constitute a finding of legal paternity. Ibid. Accordingly, Ms. Pearson's second assignment of error is overruled.
 III. THE COURT ABUSED ITS DISCRETION IN ALLOWING THE AMENDMENTS TO THE COMPLAINT.
In her third assignment of error, Ms. Pearson argues that the trial court erred in allowing amendments to the complaint relating to Monterra. CCDCFS maintains that the amendments were properly made pursuant to Juvenile Rule 22(B). The issue here is whether the complaint relating to Monterra was properly amended.
Pursuant to Juv.R. 22(B), a trial court has broad discretion in allowing amendments to a complaint. Unless the juvenile court abuses its discretion in amending a complaint, the decision will not be reversed. State v. Aller (1992), 82 Ohio App.3d 9, 12.
Juv.R. 22(B) provides, in pertinent part:
 (B) Amendment of Pleadings. Any pleading may be amended at any time prior to the adjudicatory hearing. After the commencement of the adjudicatory hearing, a pleading may be amended upon agreement of the parties or, if the interests of justice require, upon order of the court.
Here, the record reflects that on the day of trial, prior to opening statements, CCDCFS made an oral motion[2] to amend the complaint as to Monterra in the following ways: that the heading be amended from Neglect pursuant to R.C. 2151.031(A)(2) to Dependency pursuant to R.C. 2151.04; that allegation #6 be amended to read that the alleged father, Monty Calhoun, has not established paternity and provides no care and support of the child `because he is currently incarcerated'; and that allegation #9 be amended to read permanent custody is in the best interest of the child `so that the aunt, Ginger Smith, can be considered for adoption.'
These amendments were proposed and made by CCDCFS prior to opening statements. Accordingly, the amendments to the complaint were made prior to the adjudicatory hearing within the meaning of Juv.R.22(B).[3]
Thus, Ms. Pearson has not shown that the trial court abused its discretion by permitting the amendments or that any prejudice resulted. Accordingly, Ms. Pearson's third assignment of error is overruled.
 IV. THE COURT LACKED JURISDICTION TO HEAR THE MOTION FOR PERMANENT CUSTODY.
In her fourth assignment of error, Ms. Pearson contends that the trial court lacked jurisdiction to hear the motion for permanent custody because the record of the case does not contain an order of reference to the magistrate who heard the temporary custody complaint. CCDCFS maintains that an order of reference was journalized with the Cuyahoga County Juvenile Court Clerk of Courts. The issue here is whether the trial court properly issued an order of reference and whether the trial court had jurisdiction to hear the motion for permanent custody.
Juv.R.40 and Civ.R.53 provide that a juvenile judge may appoint a magistrate to act in a proceeding and hear and recommend disposition on official cases. Juv.R.40 and Civ.R.53 require an order of reference in order for a magistrate to have such authority.
Juv.R.40 and Civ.R.53 do not specify the form of the reference order nor do they require the court to journalize an individual order of reference for each issue submitted. White v. White (1977),50 Ohio App.2d 263, 267. There is no specific requirement, limitation, or restriction on the manner or method of the court entering an order of reference. Id. An order of reference may be made in one of at least three ways:
 1. An individual journalized order of reference in a particular case or several cases;
 2. A blanket journalized order of reference in a particular type or types of cases;
 3. A local rule or rules providing for automatic reference in certain types of cases.
Id.
Here, the record shows that a blanket journalized order of reference, as referred to in 2 above, was issued by the juvenile court for Magistrate Peter Murray and journalized with the Cuyahoga County Juvenile Court Clerk of Courts on July 25, 1999. Thus, the underlying order of temporary custody issued by Magistrate Murray is valid and the trial court had jurisdiction to hear the motion for permanent custody. Accordingly, Ms. Pearson's fourth assignment of error is overruled.
 V. THE COURT ERRED IN ALLOWING THE PROSECUTION TO IMPEACH APPELLANT'S CREDIBILITY PRIOR TO HER TESTIMONY.
In her fifth and final assignment of error, Ms. Pearson argues that the trial court improperly allowed the introduction of evidence of her past criminal record. Ms. Pearson claims that evidence of the prior conviction was highly prejudicial and irrelevant to the merits of the permanent custody proceeding. CCDCFS maintains that the trial court did not err in allowing the testimony of social worker Ms. Roche relating to Ms. Pearson's criminal record. The issue here is whether the evidence of Ms. Pearson's prior theft conviction was properly admitted in the permanent custody proceeding.
A trial court is vested with broad discretion in the admission of evidence. Its evidentiary rulings will not form the basis for a reversal on appeal absent a clear abuse of discretion which is materially prejudicial to the appellant. State v. Maurer (1984),15 Ohio St.3d 239, 265.
R.C. 2151.414 directs the court to consider all relevant factors which relate to the adequacy of parental care in making a determination of permanent custody. Evidence of a parent's criminal convictions are directly relevant to the issue of permanent custody. Indeed, R.C.2151.414(E)(13) requires the court to consider a parent's repeated incarceration as a factor in determining whether a child cannot or should not be placed with the parent within a reasonable period of time.
Here, the record shows that social worker Ms. Roche testified as to her knowledge of Ms. Pearson's present incarceration and criminal conviction history during her direct examination. Since R.C. 2151.414(E)(13) requires the court to consider such information in making a determination of permanent custody, the trial court did not err in allowing such testimony and could reasonably conclude that the prior conviction of theft was relevant. See In re Grant (Feb. 8, 2001), Franklin App. No. 00AP-431, unreported; In re Gaugler (June 30, 2000), Stark App. No. 1999CA00367, unreported; Farner v. Greathouse (Feb. 1, 1989), Summit App. No. 13776, unreported. Accordingly, Ms. Pearson's fifth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas Juvenile Court Division to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 _____________________ JAMES J. SWEENEY, J.
[1] A natural father is one who admits paternity or has been adjudicated as such. In re Meacham, supra.
[2] Juv.R.19 authorizes the court to permit a party to enter an oral motion.
[3] Moreover, Ms. Pearson's counsel expressly stated, on the record in open court, that he had no objection to these amendments. (Tr. 6).