**The STATE ex rel. WILKERSON, Appellant,**

v.

**TRUSS, Appellee.**

[Cite as *State ex rel. Wilkerson v. Truss* (1999), 133 Ohio App.3d 633.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 75029.

Decided May 24, 1999.

634

*William D. Mason,* Cuyahoga County Prosecuting Attorney, and *Mark R. Marshall,* Assistant Prosecuting Attorney, for appellant.

*Willie L. Griffin,* for appellee.

*Phyllis Brooks,* for Anna Wilkerson.

*Per Curiam.*

Plaintiff-appellant state of Ohio Child Support Enforcement Agency ("CSEA") appeals from an order of the juvenile court ordering a second genetic test of defendant-appellee, William Truss. We dismiss for lack of a final appealable order.

CSEA filed the complaint in the case at bar on behalf of mother Anna Wilkerson[1] and child Latoya Hatcher against defendant, seeking (1) to determine that defendant was the child's father, (2) to recover birthing expenses and obtain past, current, and future support, (3) to obtain reimbursement to CSEA for assistance provided to the child, and (4) other relief. Defendant was appointed counsel.

---

1. The mother is sometimes referred to in the record as "Ann Wilkerson."

This is the second action filed by CSEA to determine the paternity of this child. The complaint in the case at bar asserted that the alleged father in the prior case was not in fact the child's father, but that defendant was the father. During the course of the proceedings, the juvenile court granted CSEA's motion for genetic testing of the parties. The results appeared positive. The juvenile court later found that defendant did not rebut by clear and convincing evidence the presumption that he was the father.

In its order determining defendant to be the father of the child, the juvenile court specifically retained jurisdiction and continued the proceedings "for disposition on the issues of Past Care and Future Medical." The juvenile court also ordered defendant to pay the $289.49 genetic test expense as court costs. The juvenile court thereafter determined the amount due for past care, but again retained jurisdiction and continued "this cause for disposition of Future Medical and Current Support."

Defendant retained substitute counsel and requested a continuance. Defendant thereafter filed a "motion for relief from judgment and for new genetic test." The motion stated, *inter alia*, that defendant was 77 years of age and infertile, never had children in his two prior marriages, and never had sexual relations with Wilkerson, and that she reported someone other than he was in fact the child's father. The motion requested further genetic testing be performed under controlled circumstances. The judge, who presided over the original hearing, ultimately ordered further genetic testing at state's expense. The juvenile court did not, however, grant relief from its prior order determining paternity or adjudicate the pending support issues.

CSEA appeals, challenging the juvenile court's order granting a second genetic test.[2] Defendant has filed no brief. Prior to considering the merits of this appeal, however, this court must determine whether it has jurisdiction. Appellate jurisdiction is expressly limited to review of "final orders." Section 3(B)(2), Article IV of the Ohio Constitution; R.C. 2505.03. Because we find that the juvenile court's order granting further genetic testing does not constitute a final order, we lack jurisdiction and dismiss this appeal. R.C. 2505.02; Civ.R. 54(B). See, *e.g., Smith v. Tackett* (Nov. 18, 1996), Butler App. No. CA96–05–097, unreported, 1996 WL 666731.

It is well established that in actions to determine paternity and support as in the case at bar, the juvenile court's judgment is not final until paternity and all support issues raised have been fully adjudicated. See, *e.g., Nwabara v. Willacy* (June 13, 1996), Cuyahoga App. No. 69786, unreported, at 1–2, 1996 WL 325318,

---

**2.** CSEA's sole assignment of error is set forth in the Appendix.

appeal dismissed (1996), 77 Ohio St.3d 1487, 673 N.E.2d 146; *Nwabara v. Willacy* (May 6, 1994), Cuyahoga App. No. 65450, unreported, at 3–5, 1994 WL 189141, appeal dismissed (1994), 70 Ohio St.3d 1465, 640 N.E.2d 527; *Marsh v. Clay* (July 20, 1995), Cuyahoga App. No. 67854, unreported, at 2–3, 1995 WL 428569; *State ex rel. Dixon v. Clark Cty. Court of Common Pleas, Juv. Div.* (1995), 103 Ohio App.3d 523, 527–528, 660 N.E.2d 486, 488–490.

The record in the case at bar reveals that the juvenile court has never issued a final appealable order. The juvenile court's order determining paternity but retaining jurisdiction to determine pending support issues was neither final nor appealable. *Id.* Defendant's "motion for relief from judgment" was mis-captioned because the motion did not seek relief from a final judgment. See, *e.g.,* *Jarrett v. Dayton Osteopathic Hosp., Inc.* (1985), 20 Ohio St.3d 77, 78, 20 OBR 407, 407–408, 486 N.E.2d 99, 100. The juvenile court did not grant defendant's "motion for relief from judgment," but, even if it had, an order granting relief from a partial judgment does not constitute a final appealable order. *Id.*

■ The record in the case at bar reveals that the juvenile court merely granted further genetic testing prior to the entry of any final judgment in the case. It is well established, however, that orders requiring a party to submit to genetic testing in a paternity action do not constitute final appealable orders. Exhaustive research has not revealed any authority to the contrary, that is, that such orders constitute "final orders" under any category defined by R.C. 2505.02, either as it existed when the order was entered on June 29, 1998 in the case at bar or as the statute was subsequently amended effective July 22, 1998.

Courts have specifically held, for example, that orders granting genetic testing do not "determine the action," *McCarty v. Kimmel* (1989), 62 Ohio App.3d 775, 777–778, 577 N.E.2d 665, 666–667; do not affect a substantial right, *Crean v. Britton* (Jan. 10, 1981), Washington App. No. 80X17, unreported, 1981 WL 5940, and do not vacate or set aside a judgment to qualify as final orders under R.C. 2505.02. *Smith v. Tackett, supra.* The amendments to the current version of R.C. 2505.02 repeat verbatim these provisions of former R.C. 2505.02. Current R.C. 2505.02(B)(4) adds a new category of final orders, but it is not clear that orders granting genetic testing involve a "provisional remedy." Even if they did, however, such orders do not qualify under the statute as final orders because the appealing party would be afforded a meaningful and effective remedy by appeal following final judgment in the action. R.C. 2505.02(B)(4)(b).

The dissent contends that the genetic test order constitutes a final appealable order because it is an "order that affects a substantial right made in a special proceeding." This argument is unpersuasive for two reasons. The Ohio Supreme Court expressly held, contrary to the dissent's argument, that ordering a public agency to advance funds, which are later taxable as costs, does not affect a

"substantial right" of the agency. See *Smith v. Chester Twp. Bd. of Trustees* (1979), 60 Ohio St.2d 13, 14 O.O.3d 162, 396 N.E.2d 743. Moreover, *Crean* expressly rejected the dissent's argument in this precise context by holding that a genetic test order does not affect a "substantial right." The amendments to R.C. 2505.02 do not change this conclusion because subsection (B)(2), cited by the dissent, repeats verbatim the identical terms of the second clause of former R.C. 2505.02 applied in *Crean.*

The trial court in the case at bar specifically retained jurisdiction, and many unadjudicated issues remain pending. Apparently, the trial court, which heard the evidence, had some indication that the original test results were unreliable and declined to enter final judgment because of these doubts. We should not interfere with its pursuit of the truth or administration of justice in this case. If followed, the dissent's argument to the contrary would result in transforming all genetic testing orders into final appealable orders and in disrupting the orderly progress of each case.

It should be noted, contrary to the dissent's argument, that there is no indication the additional genetic tests ordered by the trial court duplicated any of the tests the trial court already ordered defendant to pay for as costs. Moreover, the trial court remains free to tax these additional costs to defendant. Even if the trial court's order granting additional genetic tests were an abuse of discretion as the dissent suggests, it is well established that an abuse of discretion does not, by itself, render final and immediately appealable otherwise interlocutory orders. *Klein v. Bendix–Westinghouse* (1968), 13 Ohio St.2d 85, 42 O.O.2d 283, 234 N.E.2d 587, syllabus.

Accordingly, the appeal is hereby dismissed for lack of jurisdiction.

*Judgment accordingly.*

KARPINSKI, P.J., and KILBANE, J., concur.

MICHAEL J. CORRIGAN, J., dissents.

MICHAEL J. CORRIGAN, Judge, dissenting.

For the following reasons, I respectfully dissent from the decision of the majority, which concluded that the judgment of the trial court allowing appellee, William Truss, a second genetic test at state's expense for the purpose of establishing paternity does not constitute a final appealable order. On May 6, 1996, appellant filed a paternity action in the Cuyahoga County Juvenile Court seeking to establish a parent-child relationship between appellee and the minor child of Anna Wilkerson. A pretrial hearing was scheduled for July 8, 1996, at which time appellee appeared and was represented by court-appointed counsel.

At that time, the trial court, at appellee's request, ordered the parties to submit to state-funded genetic testing to determine the parentage of the minor child. On August 21, 1996, the results of the genetic tests were filed with the trial court. The results indicated that appellee could not be excluded and there was a probability of paternity of 99.79 percent creating a presumption of paternity under Ohio law. See R.C. 3111.03(A)(5).

On February 7, 1997, the trial court determined that appellee had failed to rebut the presumption of paternity by clear and convincing evidence that he was the child's biological father. A corresponding support order was entered and the trial court granted judgment on Past Care (Public Assistance Reimbursement) due the Ohio Department of Human Services. The matter was continued on the issue of Past Care due Anna Wilkerson.

On May 19, 1998, the trial court granted appellee leave to file a motion to vacate the prior finding of a parent-child relationship. A motion for relief from judgment and for a new genetic test was then filed on June 29, 1998 in which appellee, a 77-year old man, alleged that he was sterile. Appellee did not present any scientific evidence, but argued that he was unable to father any other children during two previous marriages. Appellee also alleged that Wilkerson had admitted to unidentified third persons that someone other than appellee was the father. After a hearing on the motion, the trial court ordered that a second genetic test be performed at state's expense.

Appellant maintains that a second genetic test at the state's expense is improper since it creates an unwanted precedent of allowing a litigant who is unhappy with the results of a genetic test, which indicates a 99 percent plus probability of paternity, to have a second test at state's expense. It is appellant's position that such a precedent would have the effect of creating an undue financial burden on the state's limited financial resources in this area and, more importantly, hinder judicial economy by preventing the necessary degree of finality to paternity actions. Appellant also argues that the trial court's decision contradicts Loc.R. 11 of the Court of Common Pleas of Cuyahoga County, Juvenile Division, which states:

"When the first Genetic Test or Tests excludes the accused as being the father of the child in question and the mother of the child desires a test by another serologist, the costs of such second test shall be paid by the mother. The mother must file a Motion, accompanied by the required costs, for the second test within thirty (30) days after she has been notified of the exclusion."

In this instance, appellant maintains that, even though the rule in question is directed to mothers who desire a second genetic test, it can clearly be applied to purported fathers as well. Last, appellant argues that the Civ.R. 60(B) motion

for relief from judgment was not filed in a timely fashion since it was filed more than one year after the judgment in question.

At first blush, it appears that the majority's recitation of the law in this area as it relates to final appealable orders in paternity actions is correct. While I acknowledge the conclusion of the majority, I respectfully submit that amended R.C. 2505.02, which became effective July 22, 1998, allows for appeal in such a situation as the one presented in the case herein. Specifically, R.C. 2505.02(B)(2) now provides:

"(B) An order is a final order and may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:

" * * *

"(2) An order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment."

Clearly, a paternity action is a special proceeding for the purposes of R.C. 2505.02. See *Mullins v. Roe* (May 15, 1998), Scioto App. No. 97CA2518, unreported, 1998 WL 282974; *State v. Ward* (Nov. 18, 1996), Lawrence App. No. 95CA40, unreported, 1996 WL 668832. Furthermore, I believe that, in this instance, the additional paternity test in question affects a substantial right pursuant to the amended statute and that appellate review under such circumstances should be available. This is particularly true in light of the fact that the trial court record presents no substantive evidentiary reason for conducting a second genetic test. Had appellee presented more than his own somewhat conclusory statements in support of his motion, I believe the trial court may have been justified in ordering a second test. However, this is not the situation presented herein.

For the foregoing reasons, I respectfully dissent from the decision of the majority as I believe R.C. 2505.02, as amended effective July 22, 1998, allows for appellate review in this situation.

## APPENDIX

"The trial court erred in ordering a second genetic test to be conducted at state expense after previously establishing paternity based upon the results of genetic testing which showed a probability of paternity in excess of 99%."