[Cite as *Genhart v. David*, 2011-Ohio-6732.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| SHANNON GENHART | ) | CASE NO. 10 MA 144 |
| | ) | |
| PLAINTIFF-APPELLANT | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| JOHN C. DAVID | ) | |
| | ) | |
| DEFENDANT-APPELLEE | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from the Court of Common
Pleas, Juvenile Division, of Mahoning
County, Ohio
Case No. 05 JI 721

JUDGMENT:     Vacated.
April 20, 2010 Order Reinstated.

APPEARANCES:

For Plaintiff-Appellant:     Atty. Charles E. Dunlap
3855 Starr's Centre Drive, Suite A
Canfield, Ohio  44406

For Defendant-Appellee:     Atty. Susan Gaetano Maruca
Atty. Christopher A. Maruca
The Maruca Law Firm, LLC
201 East Commerce Street
Youngstown, Ohio  44503

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Mary DeGenaro

Dated:  December 22, 2011

WAITE, P.J.

{¶1} Plaintiff-Appellant, Shannon Genhart, and Defendant-Appellee, John C. David, were never married. They initially resolved the care and parenting arrangements for their minor son ("D.D.") in a 2006 paternity suit. The shared parenting agreement that concluded the parentage suit was not accompanied by any court order or decree concerning custody. Under Ohio law, by statute, unwed mothers have sole custody of their offspring unless and until a valid court order or decree awards custody to another party or to the state. In late 2008 a dispute arose concerning Appellant's proposed relocation and a change in school district for D.D. Although Appellant later revised her relocation plans, she still sought to change school districts. Initially the trial court ordered the change. Appellee filed a motion to reconsider, arguing that the trial court had mistakenly assumed Appellant was the residential parent for school purposes. The trial court converted Appellee's motion to a 60(B) motion for relief from judgment and reversed its decision to allow the change in school district. The trial court's actions constituted an abuse of discretion and were contrary to law. For these reasons, the trial court's July 27, 2010 ruling is vacated and the April 20, 2010 judgment entry is reinstated.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

{¶2} The matter of the care and support of D.D., born August 17, 2002, came before the Mahoning County Juvenile Court on petition from the Mahoning County Child Support Enforcement Agency ("MCSEA"). MCSEA sought acknowledgement of its administrative paternity finding, pursuant to R.C. 3111.02(B). The juvenile court acknowledged the administrative finding, and in 2006 the court

concluded the paternity suit by adopting a magistrate's decision which incorporated the shared parenting agreement jointly submitted by the parties. Neither the 2006 shared parenting agreement, nor the court order adopting that agreement, designated a residential parent. The 2006 agreement provided that D.D. would spend four consecutive days of each week with his mother and three consecutive days of each week with his father. At the time both parties lived in Austintown. The Austintown school system was generally designated for D.D.'s education and a child support payment of $0.00 was included in the agreed parenting plan. Appellee was required to carry D.D. on his health insurance.

{¶3} Although the 2006 agreement did not designate a residential or a custodial parent, or specify the location of either parent's residence, it required: "[i]f the Residential Parent intends to move to a residence other than the residence specified in the Decree of this Court, the Residential Parent shall file a Notice of Intent to Relocate with the Court that issued the Decree." (3/1/06 Shared Parenting Plan.) When Appellee was permanently laid off and no longer able to provide health coverage for D.D., the parties agreed, without court intervention or formal alteration of the shared parenting plan, that Appellant would pay to have D.D. added to her coverage until Appellee was again employed with benefits. Similarly, when D.D. reached school age the parties decided, without intervention, that Appellant was the residential parent for school purposes and that her address determined D.D. would attend Woodside Elementary. By December 28, 2008, Appellant was considering relocating to Pennsylvania and filed a notice of intent with the court.

{¶4}   In January of 2009, although the parties had agreed that Appellant would place D.D. on her insurance at Appellee's costs, Appellee failed to pay his portion of the health care expenses or reimburse Appellant for the expense of adding D.D.  Thus, in addition to her notice of intent to relocate, Appellant filed a contempt motion seeking payment of the healthcare expenses.   Appellant also sought reallocation of the dependant tax exemption for the period of Appellee's unemployment.   On January 16, 2009, Appellee filed a cross-motion seeking the termination of the shared parenting agreement and a temporary reallocation of custody of D.D. during the action.  Appellant responded that she was the primary caregiver and that a change in custody would not be in D.D.'s best interests.  A guardian ad litem was appointed for D.D., the motion for temporary custody was denied and Appellant was enjoined from moving to Pennsylvania during the pendency of the proceedings.  In June of 2009 Appellee filed a motion to modify, rather than set aside, the shared parenting plan.  He sought in the motion to be named residential parent for school purposes.  Both parties submitted new proposed shared parenting agreements and the matter was set for hearing on the revisions to the parenting agreement concerning the summer parenting schedule and D.D.'s schooling.   On September 21, 2009 the magistrate journalized the hearing proceedings: Appellant withdrew her motion to relocate and cross-motion for custody, Appellee withdrew his motion to terminate and his motion for custody and these were all dismissed by the magistrate.

**{¶5}** Appellant and Appellee agreed to continue (with modifications) the shared parenting plan rather than make changes in custody, and stipulated to testimony from the guardian ad litem concerning a place being held for D.D. at Woodside Elementary School in Austintown while modifications to the parenting plan were litigated. The matter was scheduled for trial on the issues regarding schooling and the shared parenting schedule. Trial was held in September of 2009; on December 29, 2009, following trial, the magistrate ordered Appellee to submit a revised shared parenting agreement designating Appellee the residential parent for school purposes, and including the revisions to the parenting schedule the parties had agreed to in August of 2009. On February 18, 2010, the magistrate issued a decision adopting a new shared parenting agreement. The new plan alternated D.D. between his parents on a week-to-week basis, rather than the four day/three day split of the original agreement, designated Appellee as the residential parent for school purposes, allocated the dependant tax exemption to Appellee exclusively (previously the exemption had alternated), and noted that a new motion for support was scheduled for hearing in front of a different magistrate. Appellant filed timely objections. On April 20, 2010 the court adopted in part and modified in part the magistrate's recommendations. The court ordered that D.D. should complete the school year in Austintown and should then be enrolled in the school district Appellant had moved to beginning with the next school year, and remain in that district thereafter.

**{¶6}** Appellee filed a motion to reconsider on April 30, 2010, suggesting that the trial court had erred in assuming that Appellant was the residential parent for school purposes based on the shared parenting agreement. The trial court scheduled a hearing on the motion to reconsider and decided to consider this motion as if it was a motion to vacate. The trial court then granted Appellee's motion to vacate, and adopted the magistrate's decision in its entirety; reversing the decision to allow D.D. to attend school in the district near his mother's new home. The court instead ordered D.D. to continue attending the Austintown school near his mother's former address and gave Appellee, solely, the dependant child tax exemption. Appellant filed this timely appeal on August 30, 2010.

## Assignment of Error No. 1

**{¶7}** "Whether the trial court's April 20, 2010 judgment entry is a final appealable order."

## Assignment of Error No. 2

**{¶8}** "Ohio Civ. R. 60 (B) cannot be used as a substitute for a direct appeal, and even if the Defendant- Appellee's motion was properly before the court, the Defendant-Appellee's motion failed to comply with Ohio Civ. R. 60 (B)."

## Assignment of Error No. 3

**{¶9}** "The Ohio Rules of Civil Procedure do not provide for a motion to reconsider, and the court lacks jurisdiction to entertain such a motion."

**{¶10}** Appellant's three assignments of error address the same operative facts and hence, will be considered together. Appellant alleges that the April 20,

2010 judgment entry was a final appealable order and Appellee concedes as much. Although Appellee does concede that the April 20, 2010 judgment entry was a final appealable order, Appellee claims that because neither party filed an appeal, no harm resulted from the court's May 18, 2010 decision to construe Appellee's motion for reconsideration as a motion for relief from judgment, set the matter for hearing and alter its April 20, 2010 judgment entry.

{¶11} Despite the parties' concession, on July 27, 2010, after a hearing on Appellee's motion, the trial court determined that the April entry was not a final appealable order, "since the matter is one that can be re-litigated based upon a change of circumstances." Having found that the prior order was not final, the court nevertheless construed Appellee's motion to reconsider as a Civ.R. 60(B) motion for relief from judgment. The court made its determination under Civ.R. 60(B)(1) regarding "mistake, inadvertence surprise, or excusable neglect." The trial court vacated its April 20, 2010, judgment entry and adopted the February 18, 2010, magistrate's decision in its entirety. The July of 2010 ruling seems to indicate that it was the court's own "mistake" in assuming the mother was residential parent for school purposes, as suggested by Appellee, that provided the grounds for relief.

{¶12} A trial court may, at its discretion, entertain a motion to reconsider an interlocutory order. *Jefferson Cty. Child Support Enforcement Agency v. Pickett* (Sept. 21, 2000), 7th Dist. No. 99 JE 5, *2. "Although a motion to reconsider a final order is a nullity, one can see reconsideration of an interlocutory order." Id. A trial court may also, if it chooses, construe a motion for reconsideration as a motion for

relief from judgment, if that motion otherwise satisfies the requirements of Civ.R. 60(B). *Ray v. Dickinson*, 7th Dist. No. 03 BE 29, 2004-Ohio-3632, ¶15 and *GTE Automatic Elec., Inc. v. Arc Industries, Inc.* (1976), 47 Ohio St.2d 146, 1 O.O.3d 86, 351 N.E.2d 113, paragraph two of the syllabus. However, such construction is generally viewed with disfavor. "Once again, this court as well as the lower courts are left in a procedural quagmire of trying to elevate a motion for reconsideration after a final judgment to the status of a motion for a new trial or as a motion for a directed verdict or the like. * * * This is a costly procedure, both financially and in manual labor, which, as in the present cause, results in a procedural morass which clouds the merits. Complications * * * can and should be avoided." *Pitts v. Dept. of Transp.* (1981), 67 Ohio St.2d 378, 381, 423 N.E. 2d 1105. "We conclude that the trial courts, already overburdened, cannot be responsible for reviewing every motion in order to determine whether the contents of the motion should be interpreted and applied in a different, and perhaps more appropriate, manner than the form or caption of the motion indicates. Such an activity would engage the trial courts in the impossible task of trying to second-guess the strategy and intentions of the parties at any point in the litigation process." *Miamisburg Motel v. Huntington Natl. Bank* (1993), 88 Ohio App.3d 117, 129, 623 N.E.2d 163. Even the trial court's broad discretion cannot alter the fact that a motion to reconsider a final order is a nullity. *Jefferson Cty.* at *2. Similarly, " '[a] ruling upon a motion for reconsideration made after final judgment is a nullity.' " *McAuley v. Smith* (1999), 133 Ohio App.3d 685, 689, 729 N.E.2d 792. Nor can a trial court consider a Civ.R. 60(B) motion for relief

from judgment unless the party is seeking relief from a final appealable order. *Jefferson Cty.* at *3.

{¶13} The threshold question is whether, as the parties agree, the trial court's April 20, 2010 order is final and appealable. Civil Rule 54 and R.C. 2505.02 govern the jurisdiction of this Court over final orders of the lower courts. Under Civ.R. 54, there is no restriction on appeals from decisions in special matters that affect the substantial rights of the parties as provided by R.C. 2505.02. See also, *In re Murray* (1990), 52 Ohio St.3d 155, 556 N.E.2d 1169; *Voss v. Voss* (1989), 62 Ohio App.3d 200, 203, 574 N.E.2d 1175. A paternity suit is a special proceeding. *State ex rel Fowler v. Smith* (1994), 68 Ohio St.3d 357, 360, 626 N.E. 2d 950 ("[p]roceedings in the juvenile division, including parentage actions, are special statutory proceedings pursuant to Civ.R. 1(C)(7).") Parents have substantial rights in the custody and care of their children. R.C. 2505.02; *In re Adams*, ¶43-44, see also *In re Murray* at 157, "The United States Supreme Court has stated that the right to raise one's children is an 'essential' and 'basic civil right.' * * * Parents have a 'fundamental liberty interest' in the care, custody, and management of the child." (Internal citations omitted). Initially, in a parentage suit, a court order establishing parentage and a duty of support, but failing to specify the terms of that support, is not a final appealable order until the amount and the nature of support is established. *State ex rel. Wilkerson v. Truss* (1999), 133 Ohio App.3d 633, 635, 729 N.E.2d 459, see also *Garvin v. Garvin* 4th Dist. No. 02 CA 23, 2004-Ohio-3626. Once the amount and nature of support is established, all subsequent orders that affect the substantial rights of the parties are

final, appealable orders. Parenting, companionship, support, and visitation issues may be revisited at any time due to a change in circumstances, or in the best interest of the child pursuant to the controlling statute. Thus, where a judgment entry or order is made in a juvenile proceeding that conclusively affects parenting rights, the order is final and appealable. The fact that the court retains some measure of jurisdiction, as prescribed by statute, does not alter the appealable character of final entries and orders made during the subject child's minority.

{¶14} In the matter at bar, the paternity suit and resulting visitation and/or parenting rights were resolved in 2006 when the court, having determined paternity, adopted the parties' parenting agreement. The subsequent motions to modify and enforce the agreement are allowed by statute. Modifications that alter custody specifically require the court to find that there has been a change in circumstances, and these modifications must be based on the best interests of the child. R.C. 3109.04(E)(1)(a). All other modifications must meet the best interest standard. R.C. 3109.04(E)(2); *Fisher v. Hasenjager* (2007), 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546. When a court rules on modifications of the agreement or order that resolved the initial suit, such decisions are rulings in special proceedings that alter the substantive rights of the parties. Hence, the juvenile court's April 20, 2010, judgment entry adopting in part and rejecting in part the magistrate's decision on the proposed amendments to the parenting agreement was a ruling in a special proceeding that had a conclusive effect on the substantial rights of the parties. The April 20, 2010 entry was a final, appealable order.

{¶15} Because we have determined that the trial court's April 20, 2010 judgment entry was a final appealable order, we turn to Appellee's motion for reconsideration. A motion for reconsideration of a final appealable order is a nullity, but may be construed as a motion for relief from judgment if it satisfies the requirements of Civ.R. 60(B). In *GTE Automatic Electric v. ARC Industries* (1976), 47 Ohio St.2d 146, 351 N.E.2d 113, the Ohio Supreme Court held:

{¶16} "To prevail on a motion brought under Civ.R. 60(B), the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken." Id. at paragraph two of the syllabus.

{¶17} The court in *GTE Automatic* stated that the three requirements "are independent and in the conjunctive, not the disjunctive." Id. at 151. According to the rule in *GTE Automatic*, Appellee must both place his motion under one of the applicable grounds identified by the rule and show that he has a meritorious claim to present if victorious. The record reflects that he does not. His claim, that the court was mistaken in assuming that Appellant was the residential parent for school purposes pursuant to the 2006 agreement when it reached its decision, is inaccurate. While the 2006 agreement is silent as to which parent is D.D.'s residential and custodial parent, Appellant is apparently unaware that where a court does not make

a different determination pursuant to statute, the mother is the residential and custodial parent by operation of law. This means that Appellant was, in fact, D.D.'s residential parent for school purposes and the trial court could not have been mistaken in so assuming. Furthermore, as we have previously explained in *Hankinson v. Hankinson*, 7th Dist. No. 3 MA 7, 2004-Ohio-2480, and in *Gron v. Gron*, 7th Dist. No. 07 JE 49, 2008-Ohio-5054, the mistake contemplated by Civ.R. 60(B)(1) is some mistake on the part of the parties, not a mistake of fact or law by the court. *Hankinson* at ¶20-26; *Gron* at ¶27-28. Mistakes of fact or law may constitute grounds for an appeal, but a motion for relief from judgment may never substitute for an appeal. The record reflects no grounds that merit relief under 60(B). Appellee's motion for reconsideration seeks exactly what it presents, it asks the court to reconsider the factors the court weighed when deciding whether or not to allow the designated school district to be changed. A "mistake" by the court, which does not appear in this record, is not grounds for relief under 60(B)(1). The motion fails to satisfy the *GTE* test.

{¶18} When an unmarried woman gives birth to a child, she "is the sole residential parent and legal custodian of the child until a court of competent jurisdiction issues an order designating another person as the residential parent and legal custodian." R.C. 3109.042. If the father of the child born to an unmarried woman acknowledges paternity, and that acknowledgment has become final according to statute, the father may seek reasonable parenting time with the child in a court of competent jurisdiction. R.C. 3111.26. The determination of reasonable

parenting rights or other rights sought by the father who has acknowledged paternity is made pursuant to sections (D), (C), (K) and (L) of R.C. 3109.051. R.C. 3109.12.

{¶19} In the alternative, the parties to a parentage suit may reach an agreement allocating rights and responsibilities. The confusion of the parties and, perhaps, the court with regard to the applicability of our decision in *Campana v. Campana*, 7th Dist. No. 08 MA 88, 2009-Ohio-796, as well as the nature of their parenting agreement, and the applicable standard for changing the terms of their agreement, stems from the fact that unlike the parties in *Campana*, the parties in this instance were never married. Married couples by statutory default have equal parenting and custody rights over the issue of the marriage, even when they are separated. R.C. 3109.03. In contrast, by statute, unwed mothers have sole custody over their children. R.C. 3109.042. For parents who were or are married, shared parenting under the code replaces joint custody, and is a continuation of the separate-but-equal-parenting rights that are the product of marriage. The code does not appear to contemplate a similar arrangement for parties that never were married, see, e.g. R.C. 3109.04(A) "[i]n any divorce, legal separation, or annulment proceeding and in any proceeding pertaining to the allocation of parental rights and responsibilities for the care of a child, * * * the court shall allocate the parental rights and responsibilities for the care of the minor children of the marriage." See also, R.C. 3109.04 (D)(1)(d) "[a]ny final shared parenting decree shall be issued at the same time as and shall be appended to the final decree of dissolution, divorce, annulment, or legal separation arising out of the action out of which the question of the allocation

of parental rights and responsibilities for the care of the children arose." Where the parties have never married, there is no statutory equivalent. Instead, the code allocates all parenting rights to the unmarried mother, and provides that the father, whose paternity has been established by law or whose acknowledgment of the child has become final, may petition for parenting time, companionship or visitation rights. R.C. 3109.12(A). Once paternity is established by law, a natural father may seek custody of his acknowledged child, and at that time the trial court may consider both the unmarried mother and the father equally. Nevertheless, absent a specific court order to the contrary, the unmarried mother is the default legal custodian and residential parent of the child for all purposes. R.C. 3109.042.

{¶20} Despite the disconnect between the shared parenting provisions and the statutory defaults for children born out of wedlock, never-wed parents may enter into an arrangement titled "shared parenting agreement," and those agreements are generally adopted by family and juvenile courts throughout the state. The title of the agreement between the parties, however, does not alter the fact that absent an explicit order to the contrary, Appellant remains the sole residential and custodial parent, by statute. R.C. 3109.04, .042, .12; R.C. 3111.13(C). A court order that gives the father of a child born to an unmarried woman parenting time, but fails to designate a residential parent, or custodial parent, does not disturb the mother's statutory rights. R.C. 3109.042.

{¶21} The trial court's attempt to designate Appellee's motion for reconsideration into a Civ.R. 60(B) motion to vacate is unmerited by the facts in the

record and is contrary to law. The trial court's July 27, 2010 ruling amounts to an abuse of discretion and is vacated. The trial court's April 20, 2010, order is reinstated.

## CONCLUSION

**{¶22}** The trial court's April 20, 2010 order was a final, appealable order, Appellee's motion to reconsider was a nullity, as was the trial court's order construing Appellee's motion as a motion to vacate and granting a motion to vacate when no appropriate factors exist. The trial court's July 27, 2010 order is hereby vacated and the April 20, 2010 judgment is reinstated. Any future proceeding is to be made in accordance with the Ohio Supreme Court's decision in *Fisher v. Hasenjager* and R.C. 3109.12, .04, .041, and .042, where applicable.

Donofrio, J., concurs.

DeGenaro, J., concurs.